# Richmond

## O. B. Cross, Administrator C. T. A. of the Estate of E. T. Dunn, Deceased, et al: v. Florence ·Grimes, et al.

March 4, 1946.

Record ·No. 3016.

Present, All the Justices.

The opinion states the case.

*George D. Bowles*, for the plaintiffs in error.

*H. M. Ratcliffe*, for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

On May 19, 1943, E. T. Dunn, a retired member of the Richmond police force, but a resident of Henrico county, died at the age of seventy years. He left surviving his second wife, Mrs. Virginia Hilda Dunn, whom he had married eight years previously, and six adult children by his first wife. In addition to certain benefits in the Police Benevolent Association of Richmond, which he had directed should be paid on his death to his widow, the decedent left a small estate consisting of real and personal property of the approximate value of $2,000.

On May 24, 1943, O. B. Cross qualified as administrator of the decedent's estate. On February 9, 1944, the clerk of the Circuit Court of Henrico county, in an *ex parte* proceeding, admitted to probate a writing purporting to be the last will and testament of the decedent. It was written on

both sides of a plain card, three and one-half by two inches
in size. The writing on one side of the card reads thus:

> "Mrs. E. T. Dunn.
> Is a humbug. dont
> you think so
> Har Ha. but I"

On the other side it reads thus:

> "owe every thing
> to her & leave all
> to my wife fee
> simple. E. T. Dunn
> Nov. 3—1942."

The decedent's children by his first wife (the defendants in
error here) appealed from the clerk's order of probate.
Code, sec. 5249. A jury was waived by all parties, and by
consent the evidence was heard *ore tenus* by the lower court.
The sole issue was whether the purported holographic will
was wholly in the handwriting of the deceased, as required
by Code, sec. 5229. The lower court decided that it was
not, refused to admit the writing to probate, and to review a
judgment to that effect the present writ of error has been
allowed.

The main contention is that the finding of the trial court
is contrary to the evidence and without evidence to sup-
port it.

The oral testimony of the various witnesses was not taken
down and transcribed by a reporter, and hence we are fur-
nished only with a summary of this, agreed to by counsel and
certified by the trial court in the usual manner.

Mrs. Dunn testified that in January, 1944, about eight
months after the death of her husband, she found the writing
on a "sticker" receipt file in the attic of the bungalow which
she and her husband had occupied up to a short time before
his death. On the file with the purported will there were
no other valuable papers, but only a number of sales tickets.

Mrs. Dunn further testified that she had aided her husband in financing the purchase of their home, and that he had "many times told her he was going to fix things for her." She was of opinion that the handwriting on both sides of the card was that of her late husband. Her opinion of the genuineness of the handwriting and the signature was corroborated by the testimony of her sister, her niece, and the administrator of the estate. Both the president of a local bank with which the decedent had transacted business for some time, and a notary in the Richmond Police Department who had taken the decedent's acknowledgment some four years prior to his death, likewise thought the signature was genuine.

On the other hand, two of the decedent's daughters and a son testified that the entire writing was not that of their father, and that some of the words, as well as the purported signature, had been traced on the card by means of carbon paper. The daughters testified that their father was quite particular about his financial transactions and the manner in which he preserved his "valuable papers." Mrs. Grimes testified that these papers her father had brought with him when he moved to her house, in Richmond, for convenience of treatment shortly before his death. She said that only two or three days prior to his death her father stated to her that he had not made a will. Both daughters likewise testified that their father and mother were a devoted couple and that he often affectionately referred to her as a "humbug."

H. A. Cassidy, an inspector of special agents for the Chesapeake & Ohio Railway Company, who had had considerable experience in the examination of documents as a handwriting expert, testified for the contestants. He had made before the trial, he said, a critical examination of the handwriting in the purported will and had compared it with other specimens of the handwriting of the deceased, concededly written at or about the time of the date of the instrument. He was of opinion that the words, "Mrs. E. T. Dunn Is a humbug. dont you think so Har Ha", were

written with a lead pencil and were wholly in the hand-writing of the deceased, but that the remainder of the document was not written by him. A number of the words, or portions of words, in the latter part of the writing, he pointed out, were not written with lead pencil, but were traced on the card by means of carbon paper. He also pointed out that the purported signature lacked some of the marked characteristics of all specimens of the genuine signature of the deceased.

The reasons which led the witness to this conclusion are set out in detail in his testimony and need not be repeated here. The trial court in its written opinion shows that it was impressed with the testimony of this witness, which it characterized as being "clear and comprehensive."

Furthermore, the decedent's statement to his daughter, shortly before his death, that he had not made a will was an added circumstance which strengthened the assault of the contestants on the genuineness of the document. *Samuel* v. *Hunter*, 122 Va. 636, 638, 95 S. E. 399; *Adams* v. *Ristine*, 138 Va. 273, 305, 122 S. E. 126, 31 A. L. R. 1413.

After a consideration of all of the evidence and an examination of the document itself, the trial court reached the conclusion that the writing was not wholly that of the deceased. The issue presented a pure question of fact, and the credibility of the several witnesses and the weight to be attached to their testimony were peculiarly for the trial court. As we have frequently said, where a trial court hears the witnesses *ore tenus*, its finding of fact has the same force and effect as a jury's verdict, and in the same manner and to the same extent is binding on us. *Forbes* v. *Forbes*, 182 Va. 636, 640, 29 S. E. (2d) 829, 831, and other cases there cited. There is ample evidence, we think, to support the finding of the trial court.

The contention is next made that the trial court's finding that the writing in part is not that of the deceased, but is a "forgery," is not supported by proof of a sufficient degree. In other words, it is said, the proof fails to show "beyond all

reasonable doubt," or even "clearly and convincingly," that the writing is not genuine.

The trouble with this argument is that it overlooks the elementary proposition that in a probate proceeding, the burden is on the proponents to show by a preponderance of the evidence that the purported will is written and executed in the manner prescribed by the statute. (Code, sec. 5229.) See *Brown* v. *Hall*, 85 Va. 146, 157, 7 S. E. 182; *Triplett* v. *Triplett*, 161 Va. 906, 916, 172 S. E. 162. The contestants are not required to prove, as the plaintiffs in error seem to think, that the writing is not genuine.

Since the document here was sought to be probated as a holographic will, the burden was on the proponents to show that it was "wholly in the handwriting of the testator," as required by the statute. The only question before the trial court was whether the evidence showed that the proponents had carried this burden. The lower court, which sat as a jury, and whose peculiar function it was to weigh and evaluate the testimony of the various witnesses, found that the proponents had not carried the burden. Hence their case falls.

Another assignment of error arises out of this situation: The witness, Cassidy, as has been said, prior to the trial, had made a critical examination of the handwriting in the disputed document and had reduced his observations to writing. During the trial, without objection from the proponents, he frequently referred to and read from this memorandum, which, however, was not formally offered in evidence. At the conclusion of the evidence the court asked for this memorandum. As there was no objection from either side, it was handed to the court along with the other documents which had been offered in evidence. After the court had announced its decision, for the first time counsel for the proponents objected to the court's consideration of this memorandum, and the fact that it had done so is assigned as error.

We need not stop to consider whether the memorandum which had been made and used by the witness in

this manner was admissible in evidence. Having interposed no objection to the court's consideration of it at the time the document was called for and produced, the later objection, after the decision had been announced, was plainly too late.

Under this assignment it is argued that the written opinion of the trial court indicates that it disregarded the oral testimony of the various witnesses and based its conclusion entirely upon a consideration of Cassidy's written memorandum. We do not think that the trial court's opinion is susceptible of this interpretation. It shows that the case was "fully heard and submitted." While it referred to the "testimony" of Cassidy as being "clear and comprehensive," it makes no mention whatever of the memorandum complained of.

Moreover, both the opinion and the judgment show that the court's finding was based partly upon its own "examination of the document" itself, which, it said, contained words which were "traced over carbon paper." Such an examination is, of course, one of the functions of the fact-finding tribunal in cases of this character.

We find no error in the judgment complained of, and it is

*Affirmed.*