## Richmond

### Myrtle Gray Grady, et als. v. W. Dwight Fauls, et als.

June 20, 1949.

Record No. 3497.

Present, All the Justices.

The opinion states the case.

*George S. Harnsberger,* for the plaintiffs in error.

*Ward Swank, K. C. Moore, Richard A. Jackson* and *Laird L. Conrad,* for the defendants in error.

GREGORY, J., delivered the opinion of the court.

John E. Kelley died on February 19, 1943, leaving an estate of an approximate value of $70,000. He was a resident of the city of Harrisonburg and was engaged in the fuel and building supply business. He had been twice married. By his first wife he had six children but none by his second wife. She survived him, as did four of his children. He was also survived by four grandchildren who were children of a deceased daughter.

On March 23, 1943, a paper writing bearing date July 20, 1938, was offered for probate as the last will and testament of John E. Kelley, deceased. It was duly admitted to probate, and the First National Bank of Harrisonburg, the named executor, qualified as such, and from that time has continued to act as such fiduciary.

Under the will the testator bequeathed to his daughter Honora Toppin, $1,000, and to another daughter, Mary Fauver, $2,000. These sums were to be paid promptly, and they were to have no further interest in the estate.

The widow was given $75 per month during her lifetime, and a life estate in a residence. The testator gave his bank stock to the bishop of the Catholic church, and $50 was given to each of six children for whom he had acted as Godfather. The residue of his estate was given to his other daughters.

An envelope addressed to Myrtle Gray (who is also known as Myrtle Gray Grady), at Harrisonburg, and received by her, which was postmarked Hamlet, North Carolina, July 13, 1945, contained another paper writing, bearing date October 19, 1940, which purported to be the last will and testament of John E. Kelley. It was admitted to probate before the clerk of the Circuit Court of Rockingham county, on July 25, 1945, in an *ex parte* proceeding. This purported will is as follows:

"October 19, 1940

"I leave all my Bank stock to the Catholic Church of Harrisonburg.

"To my wife, Ethel L. Kelley, I leave the sum of seventy-five dollars, $75.00 per month as long as she remains my widow.

"To Myrtle M. Gray, I leave the house and lot on Third Street.

"To Albert Reedy, I leave the sum of five hundred dollars, $500.00.

"To my grandchildren, I leave the sum of one thousand dollars, $1,000.00 each.

"The rest of my estate is to be divided equally among my living children, share and share alike.

"I hereby appoint Sam Toppin my administrator.

John E. Kelley

K. M. Higgs
Thomas Phalen, Jr."

The body of this will, hereinafter referred to as the will of 1940, was written on a typewriter.

An appeal was taken from the clerk's order of probate to the circuit court where the issue to be tried was whether the will of 1940, quoted above, was the last will and testament of John E. Kelley, deceased. A jury was waived, and the issue was tried by the court. The trial resulted in a judgment of the court holding that the will of 1940 was not the true last will and testament of John E. Kelley, deceased, and accordingly the probate thereof by the clerk was set aside. It is from that judgment this writ of error was granted.

The assignments of error revolve around the fundamental question of the genuineness of the signatures of the testator, John E. Kelley, and of the witnesses, K. M. Higgs and Thomas Phalen, Jr., to the will of October 19, 1940. If any one of these signatures is not genuine the will was properly rejected for probate.

. The court, after mature consideration of all of the evidence, held that the signatures on the will were not genuine. Our review under elementary principles is limited to the issue of whether there was or was not sufficient evidence to support the finding of the court rejecting the will.

There are two other questions to be decided, but they will be discussed in a later portion of this opinion. In cases of this kind the controlling rule is as stated by the court below, in its comprehensive opinion, as follows:

"As heretofore stated, the mere production of the paper writing dated October 19, 1940, creates no presumption whatsoever as to its execution. It is first necessary that the signature of John E. Kelley, and the signatures of K. M. Higgs and Thomas Phalen, Jr., the two attesting witnesses are all genuine, i. e., all three signatures are in the respective handwriting of said testator and witnesses, before any presumption arises as to said will being duly and legally executed. Said signatures and handwriting are the. primary and basic facts which must be proved. In any probate proceeding the burden is on the proponents to show by a preponderance of the evidence that the purported will is written and executed in the manner prescribed by the statute, and the opponents are not required to prove that the writing is not genuine.

"The court is of the opinion that the rule enunciated in *Cross* v. *Grimes*, 184 Va. 926, 37 S. E. (2d) 1, is applicable to the instant case. Justice Eggleston in rendering his opinion said:

" 'The contention is next made that the trial court's finding that the writing in part is not that of the deceased, but is a 'forgery', is not supported by proof of a sufficient degree. In other words, it is said, the proof fails to show 'beyond all reasonable doubt', or even 'clearly and convincingly', that the writing is not genuine.

" 'The trouble with this argument is that it overlooks the elementary proposition that in a probate proceeding, the burden is on the proponents to show by a preponderance of the evidence that the purported will is written and executed in the manner prescribed by the statute. Code, section 5229. See *Brown* v. *Hall*, 85 Va. 146, 157, 7 S. E. 182; *Triplett* v. *Triplett*, 161 Va. 906, 916, 172 S. E. 162. The contestants are not required to prove, as the plaintiffs in error seem to think, that the writing is not genuine.' "

The burden of proof was upon the proponents, the petitioners here, to show by a preponderance of the evidence that the will of October 19, 1940, was written and executed in the manner prescribed by the statute.

There were many witnesses who testified for and against the will. However, we are only interested in the testimony which tends to support the judgment of the trial court. If it supports the judgment it is not our duty to reconcile the conflicts in the evidence.

There are substantial differences between the provisions of the 1938 will and those of the will of 1940. Among them, the bequests to the two daughters are greatly increased in the 1940 will by including them as residuary legatees. Two new legatees are brought into the 1940 will, namely, Myrtle M. Gray, who was left a house and lot on Third street, and Albert Reedy, who was given $500. This will took from the widow, Mrs. Kelley, a life estate in a house and lot which had been given her in the 1938 will. The monthly payments to her were the same in both wills, but in the 1940 will she was to receive the $75 per month only so long as she remained Kelley's widow. There are other differences but it is not necessary to call attention to them.

The 1938 will was prepared by a careful and skilled attorney. There were many provisions. The will of 1940 was brief, and upon its face discloses that it was not prepared by an attorney but by an untrained person in such matters.

The court had before it many specimens of the genuine handwriting of John E. Kelley, K. M. Higgs, and Thomas Phalen, and of course it had before it the 1940 will with the names of those gentlemen signed to it. It compared the genuine with the names written on the will, and in the light of the other evidence, it found that the signatures to the 1940 will by the testator and the witnesses were not genuine.

As to the signature of Thomas Phalen, "Jr.", the court was emphatic in finding that it was spurious. The court found that there was no Thomas Phalen, Jr., and that the

evidence failed to show that Thomas Phalen signed his name as a "junior". This finding is abundantly supported by a preponderance of the evidence. If Phalen's signature was not genuine, and from the record we are bound to conclude that it was not, this alone would have justified the court in rejecting the will of 1940 and refusing to admit it to probate.

In addition to having the specimens of the genuine signatures to compare with those on the will of 1940, there was the testimony of Mrs. Kelley, the widow of the testator, who stated positively that Kelley's name signed to the 1940 will was not in his handwriting. Supporting her testimony was that of an expert in handwriting who testified at great length and in detail, concluding that not only was Kelley's signature a forgery, but also that the signatures of Higgs and Phalen were forgeries. There were other witnesses who testified as to the genuineness of the signatures to the 1940 will, but the court, in weighing all of the evidence, settled the conflict by accepting the testimony of the witnesses for the opponents, and in making its own comparisons of the handwritings, reaching the conclusion that the signatures to the 1940 will were not genuine. The evidence fully sustains that conclusion.

Much is said about the manner in which the expert witness testified. It is made the subject of an assignment of error. He had previous possession of the genuine signatures of Kelley, Higgs, and Phalen. Likewise, he had the benefit of studying in advance the names signed to the 1940 will. He personally made comprehensive comparisons in a scientific way, and personally made extensive notes calling attention to the many variations between the genuine signatures and those signed to the 1940 will. These notes comprised several typewritten sheets. Counsel for the proponents made an objection preliminary to the testimony of the expert to the effect that he be not allowed to read his report. Upon this objection the court made the following ruling: "The court's ruling is that, of course, Mr. Cassidy cannot read into this record a prepared report in advance of

the trial, that would be *ex parte*, or read a prepared deposition. But I know of no ruling of the law that limits a witness from using his notes, in whatever form they may be, to refresh his memory while he is on the stand, whether it be a report or a prepared deposition. Mr. Cassidy will be permitted to testify and make whatever use he sees fit of his own notes in whatever form they may be. The court is not concerned with the form of those notes."

Then the expert witness made this statement: "I want it made as a matter of record in the court that I have examined possibly a hundred cases since I made the examination in the Kelley will case. It is a physical impossibility for me to remember all of the things that I passed upon just speaking extemporaneously, as the saying is here, or testifying. I'll have to refer to my notes or I won't be of any help to the court."

Whereupon, the court ruled that the expert could use his notes which were made by himself.

After the expert witness had testified upon direct examination, attorney for the proponents called attention to the fact that the witness had read practically three-fourths of his testimony, and counsel asked that that fact be noted. The court ruled, "The record may so show".

The ruling of the court on this question followed the law and the uniform practice in Virginia. Under it the expert was permitted to use and refer to his notes which were personally made by him. From the record it is not clear that he violated the rule. His testimony was under the discretionary control of the court, and it is not shown that the court abused its discretion. We will not presume that it did so, in fact, we presume that the witness made such use of his notes as he was directed to do by the court. The record does not disclose that he read into it a deposition or a statement. The bare reading of his testimony will disclose that it would be difficult, indeed, if not impossible, for a witness to call attention of the court to all of the variations and discrepancies in the signatures examined, including those admittedly genuine, without some reference

to notes or memoranda. Many of these were technical and scientific; some of them had been developed by instruments and photography used in testing the genuineness of signatures. It would appear that an expert of this kind should have the same liberality in using his notes in testifying as an accountant would have in using an audit when testifying in regard to long and involved accounts. We are therefore of the opinion that the objection is without merit.

There were many suspicious and unexplained circumstances regarding the 1940 will that may have tended to support the conclusion of the court that it was not valid. The court considered these and expressly called attention to them in its opinion. It is needless to refer to all of them. There was no evidence tending to disclose the scrivener of the will of 1940, but on the other hand, the evidence did disclose that Kelley did not operate a typewriter and, in fact, did not own one. Another unexplained circumstance is that if the 1940 will were genuine, why did Kelley keep in his safe the 1938 will for three years after the 1940 will was written. There is no evidence as to who took the will from Kelley's custody and secreted it until July, 1945.

It is intimated that Mrs. Kelley took the will of 1940 and secreted it until July, 1945, but no explanation has been made as to why she would do that, or as to why she would send the will to Myrtle M. Gray, from Hamlet, North Carolina, rather than to some of the members of her family. No one has testified as to who sent the paper from Hamlet, North Carolina, to Harrisonburg. Mrs. Kelley was the only person who had access to the safe of John E. Kelley and who knew the combination, and she has testified positively that the will of 1940 was never in the safe either before or after Kelley's death.

Another assignment of error challenged the court's ruling in refusing to permit the introduction in this case of the order of the clerk of July 25, 1945, admitting to probate the will of 1940.

This order was sought to be introduced because it contained the statement that C. H. Mauzy swore to the genuine-

ness of the signature of Thomas Phalen, Jr., and he being ill at the time of this trial, the court was asked to treat the order as evidence of what Mauzy would have sworn to if personally present as a witness.

Counsel for the proponents invoke section 5261 of the Code (Michie, 1942). That section reads as follows: "What may be admitted as evidence on trial by jury.—The record of what is proved or deposed in court by witnesses on the motion to admit a will to record, and any depositions lawfully taken out of court, on such motion, of witnesses who cannot be produced at a trial afterwards before a jury, may, on such trial, be admitted as evidence, to have such weight as the jury shall think it deserves."

A mere reading of the statute shows conclusively that before this section applies there must be a trial by a jury. The title to the statute as carried in the Code is, "What may be admitted as evidence on trial by jury". In the body of the section it applies in case of witnesses who cannot be produced at a trial afterwards, "before a jury", and finally, it concludes, "to have such weight as the jury shall think it deserves". We cannot ignore the plain language of the statute. It needs no interpretation, and it applies only to cases tried by a jury.

Moreover, this was an appeal from the order of the clerk under section 5249 of the Code, 1942 (Michie). Trial by jury could be had only when all persons interested were properly convened (Code, section 5256), as was the case here, and request made for such a trial (Code, section 5257). Even if there had been a trial by jury here, or under section 5259 after a bill in equity had been filed, the clerk's order would still have been inadmissible under section 5261 for these reasons:

(1) By its terms that section applies only to the record of what has been proved or deposed "in court." It does not apply to what has been proved or deposed before a clerk;

(2) The record of what is proved or deposed means the

record of what the witnesses said, not the conclusion of the clerk as to the effect of what they said.

The order of the clerk states that "the genuineness of the signature of the said Thomas Phalen, Jr., was proved according to law by the oath of E. C. Wilton and C. H. Mauzy." In *Dickens* v. *Bonnewell*, 160 Va. 194, 206-7, 168 S. E. 610, 614, this court said of a similar order: "We will, however, go so far as to say that the order of the clerk, in the instant case, is not, in our opinion, such a 'record.' The order merely states that the will was 'fully proved by the oaths of the subscribing witnesses thereto (naming them), and was thereupon ordered to be recorded.' This is not a record of what the witnesses proved or deposed, but simply the conclusion reached by the clerk upon the evidence given before him."

The clerk's order in the present case does not purport to be a record of what the witness, Mauzy, testified to. It does not set forth what Mauzy said, but merely the conclusion of the clerk from what Mauzy said, without stating what the evidence was that led the clerk to that conclusion, or furnishing any means of testing the worth of that conclusion. It could not have been the purpose of the statute to make evidence out of that sort of material.

For these reasons the refusal to receive the order of the clerk as evidence was clearly right.

The judgment is affirmed.

*Affirmed.*