## Richmond

ROBERT G. WILROY v. RAYMOND W. HALBLEIB.

January 14, 1974.

Record No. 8191.

Present, Snead, C.J., I'Anson, Harrison, Cochran, Harman and Poff, JJ.

*Robert G. Winters* (*White, Reynolds, Smith & Winters*, on brief), for plaintiff in error.

*Harry J. Hicks* (*John Joseph Baecher*, on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

Robert G. Wilroy filed in the court below a petition for the *inter partes* probate of several writings allegedly signed by Rose M. Halbleib, deceased, as her last will and testament. A jury was impaneled to ascertain which, if any, of the writings, including a writing dated March 1, 1960, in which Wilroy was the principal beneficiary, should be admitted to probate as decedent's will.

After considering the evidence and instructions of the court, the jury returned a verdict finding that the writing dated March 1, 1960, purporting to have been signed by Rose M. Halbleib, "is not the valid will of Rose M. Halbleib."

Judgment was entered on the jury's verdict and, in the same order, the court overruled Wilroy's motion to require the administrator of the decedent's estate to surrender to him certain United States Savings Bonds which were payable to him upon the death of Rose M. Halbleib. We granted Wilroy an appeal.

Wilroy contends that the trial court erred (1) in permitting the contestant, Raymond W. Halbleib, to present to the jury inconsistent and contradictory contentions that the purported signatures of Rose M. Halbleib on the writing dated March 1, 1960, and the carbon copy thereof, were forgeries, and that the signatures thereon had been obtained by undue influence; (2) in not sustaining his motion to strike Halbleib's evidence on undue influence and forgery because the evidence was insufficient to submit those issues to the jury; and (3) in not directing the administrator of decedent's estate to deliver to him certain United States Savings Bonds.

The evidence shows that Rose M. Halbleib died on March 30, 1971, seised and possessed of real and personal property located in the City of Norfolk. She was survived by her husband, Raymond W. Halbleib, who qualified as administrator of her estate. After Halbleib qualified on the estate, he discovered in his wife's safe deposit box the following paper writings which he lodged in the clerk's office:

(1) A typewritten instrument, dated March 1, 1960, devising and bequeathing to her nephew, Robert G. Wilroy, the principal portion of her estate. There was no provision for her surviving husband. This document carried the purported signature of "Rose M. Halbleib." It also carried the signatures of three subscribing witnesses: Edward D. Hurd, Charlotte B. Hurd, and Albi P. Brewster;

(2) A carbon copy of the March 1, 1960, instrument, which bore the purported signature of Rose M. Halbleib and the signatures of the above three attesting witnesses;

(3) A holographic document, dated January 1, 1970, signed by Rose M. Halbleib, giving $1,000 to Epworth United Methodist Church; and

(4) A holographic document, dated January 3, 1970, entitled "Amendment # 1," signed by Rose M. Halbleib, which directed that her husband should have her half interest in their home and that her body be placed in a mausoleum which she had erected.

Edward D. Hurd testified that he wrote the typewritten document dated March 1, 1960, at the request of Rose M. Halbleib; that although he was not an attorney and had no legal training, he charged Mrs. Halbleib $5.00 for writing the will; that Rose M. Halbleib signed both the original and carbon copy of this document in his presence and in the presence of the other two attesting witnesses, one of whom, Albi P. Brewster, had since died; and that after the documents had been thus signed he handed them to Rose M. Halbleib.

Charlotte B. Hurd, one of the attesting witnesses, testified that Rose M. Halbleib signed both the original and carbon copy of the purported will in her presence and in the presence of the other attesting witnesses.

Mattie Wilroy, mother of the petitioner, Robert G. Wilroy, and sister-in-law of the decedent, testified that the signatures on the two typewritten documents were the true signatures of Rose M. Halbleib. She went with Rose Halbleib to Hurd's home when Rose discussed with Hurd the preparation of her will, but she was not in the room with them and did not know how decedent's will "was made up." Rose and her nephew thought a "great deal" of each other.

Kathleen McGowan, who worked with Rose M. Halbleib in a department store for many years, testified that Rose was opinionated, adamant in her views, and mentally capable.

Raymond W. Halbleib, the widower of Rose M. Halbleib, testified that he and the decedent were married and had lived together for more than 27 years, except for a short period during which they were separated. He was well acquainted with the handwriting and signature of his wife, and said that the signatures on the typewritten document, and the carbon copy thereof, dated March 1, 1960, were not her signature. He compared those purported signatures with his wife's signatures on checks and other instruments which he knew she had signed, and pointed out differences which, he said, showed him that the signatures on the two typewritten documents were not those of

his wife. He said that the two holographic documents found in the safe deposit box were in his wife's handwriting.

Halbleib also testified that Mattie Wilroy had from time to time shown an interest in the financial affairs of the Halbleib family and frequently attempted to tell Rose what disposition she should make of her estate. This, Halbleib testified, indicated to him that Mattie Wilroy had "complete control" over his wife. He said, however, that his wife was strong-willed and opinionated.

█ Wilroy contends that the trial court erred in permitting the contestant, Halbleib, to present to the jury mutually exclusive and contradictory defenses of undue influence and forgery. He relies on the rule stated in *Burch* v. *Grace Street Bldg. Corp.*, 168 Va. 329, 340, 191 S.E. 672, 677 (1937), that a party will not be permitted "to assume successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory."

The doctrine is in the nature of estoppel and is a positive rule of procedure based on manifest justice, and on considerations of orderliness, regularity, and expedition in litigation. It prevents litigants from "playing fast and loose" with courts. *Rohanna* v. *Vazzana*, 196 Va. 549, 553, 84 S.E.2d 440, 442 (1954).

Wilroy's reliance on the doctrine in the present case is misplaced. The doctrine estops a litigant from taking a position directly contrary and inconsistent with one which he has previously assumed, either in the course of litigation for the same cause of action, or in dealings *in pais*. *Burch, supra,* 168 Va. at 340, 191 S.E. at 677.

The situation in the present case is different. Here we are concerned with whether a person can assert inconsistent defenses in the trial of a case. Section 8-134, Code of 1950, as amended, 1957 Repl.Vol., in pertinent part, provides that a defendant "may plead as many several matters, whether of law or fact, as he shall think necessary. . . ." Thus a defendant may plead alternate defenses, and evidence based on his pleadings may be inconsistent and contradictory.

In *Norfolk Hos'y Co.* v. *Aetna, Etc.*, 124 Va. 221, 98 S.E. 43 (1919), Judge Burks, speaking for the court, said:

". . . [T]he defendant may plead as many several matters of law or fact as he deems necessary. Code, sec. 3264 [now § 8-134, *supra*]. Not only so, 'but with us inconsistent pleas are allowable, and in trying one, the court cannot look to the existence of the other, hence

we look upon each branch of the pleading as totally separate and distinct from every other, and the defenses under one cannot be straightened (*sic*) or curtailed by the existence of the other. Were it otherwise, the liberty of pleading several, and even contradictory, pleas would be defeated . . . . Nothing is more common in practice than contradictory pleas." 124 Va. at 234, 98 S.E. at 46.

Since the contestant, Halbleib, could assert inconsistent defenses and present evidence based on those defenses, it follows that it would not constitute error to submit to the jury the alternate defenses of undue influence and forgery if justified by the evidence.

The principal question on this appeal is whether the trial court erred in refusing to strike Halbleib's evidence on the issue of undue influence.

To justify submission of the question of undue influence to a jury, there must be evidence presented which is sufficient to show that the person executing the will was deprived of his volition to dispose of his property as he wished. There must be manifest irresistible coercion which controls and directs the testator's actions. *Wood* v. *Wood,* 109 Va. 470, 472, 63 S.E. 994, 995 (1909); *Mullins* v. *Coleman,* 175 Va. 235, 239, 7 S.E.2d 877, 878 (1940). Resistible persuasion, solicitation, advice, suggestions, and importunity do not constitute sufficient evidence of undue influence. *See Redford* v. *Booker,* 166 Va. 561, 574, 185 S.E. 879, 885 (1936), and cases there cited.

In the case at bar, Halbleib's testimony relating to Mattie Wilroy's activities does not show any coercion on her part which controlled and directed Rose M. Halbleib as to how she should dispose of her property when she executed the purported will. At most, Mattie Wilroy's activities amounted to no more than mere suggestions to the decedent. Moreover, there was no evidence that Mattie Wilroy knew that Rose M. Halbleib had executed the document and copy thereof dated March 1, 1960, leaving the major portion of her estate to Robert Wilroy, Mattie Wilroy's son.

Since there was no evidence of undue influence, the trial court erred in not striking the evidence on that issue and removing it from the jury's consideration.

We do not agree, however, with Wilroy's contention that the evidence was insufficient to submit to the jury the issue of the alleged forgery of Rose M. Halbleib's signatures on the March 1, 1960, documents.

In a probate proceeding the burden is on the proponent to show by a preponderance of the evidence that the purported will was written and executed in the manner prescribed by statute. A contestant is not required to prove that the writing is not genuine. *Grady* v. *Fauls*, 189 Va. 565, 569, 53 S.E.2d 830, 832 (1949). *See also Cross* v. *Grimes*, 184 Va. 926, 932, 37 S.E.2d 1, 3 (1946).

The evidence was conflicting on the factual question whether the signatures of Rose M. Halbleib on the March 1, 1960, documents were genuine. Thus the credibility of the witnesses and the weight to be attached to their testimony were jury questions to be resolved in determining whether the proponent, Wilroy, had carried his burden that Rose M. Halbleib's signatures were genuine.

Here, we are unable to say from the jury's verdict whether they found that the March 1, 1960, document was not the valid will of Rose M. Halbleib on the ground of either undue influence or forgery.

■ The trial court correctly refused to direct the administrator to deliver the United States Savings Bonds, payable to Wilroy upon the death of Rose M. Halbleib. The ascertainment and enforcement of property rights were not proper issues in this proceeding. *Tyson* v. *Scott*, 116 Va. 243, 250, 81 S.E. 57, 60 (1914); *Whittle* v. *Roper*, 149 Va. 896, 904, 141 S.E. 753, 756 (1928). Moreover, the statutory jurisdiction of the Corporation Court of the City of Norfolk did not give it the right or power to determine that issue.

For the reasons stated, the judgment of the court below is reversed and the case is remanded for a new trial.

*Reversed and remanded.*

HARRISON, J., dissenting.

I agree with the contention of the appellant that Halbleib's defense of forgery (the signature on the will was not signed by his wife) was inconsistent with his defense of undue influence (the signature on the will was that of his wife, but she was coerced or unduly influenced to sign). Further, and assuming but not agreeing that Halbleib could pursue, present evidence and have the jury instructed on both theories at the same time, I find the evidence insufficient to establish either forgery or undue influence. I would therefore reverse and enter final judgment for Wilroy.