COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chaney, Callins and Senior Judge Petty
Argued at Lexington, Virginia


PERVIS JOSEPH HARRIS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1288-21-3                 JUDGE DOMINIQUE A. CALLINS
                                                       SEPTEMBER 6, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

J. Thomas Love, Jr., Senior Assistant Public Defender, for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Pervis Joseph Harris appeals a November 16, 2021 order revoking two years of his

previously suspended sentence.  Harris argues that the trial court erred by imposing more than

fourteen days of active incarceration because his hearing notice only alleged technical violations

and did not refer to a failure to pay restitution.  Harris also argues that the trial court erred by

denying without a hearing his motion to set aside and reconsider the verdict.  Finally, Harris argues

that the trial court abused its discretion by revoking two years of his previously suspended sentence

based on technical violations and a failure to make sufficient restitution payments.  For the

following reasons, we affirm the trial court's judgment.

## BACKGROUND

"In revocation appeals, the trial court's 'findings of fact and judgment will not be

reversed unless there is a clear showing of abuse of discretion.'"  *Jacobs v. Commonwealth*, 61

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

In March 2014, the trial court convicted Harris of embezzlement and sentenced him to ten years' incarceration, with seven years suspended. The trial court also ordered Harris to pay nearly $48,000 of restitution in "regular monthly installments." In March 2017, Harris's probation officer filed a major violation report alleging that Harris had twice tested positive for cocaine and had disregarded the probation officer's instructions regarding a substance abuse assessment. Harris also had not paid any of the restitution owed and "absconded for three years, nine months, and fourteen days," until his arrest in January 2021. Following a revocation hearing in February 2021, the trial court revoked two of the seven years previously suspended, and resuspended all but thirty days. The court also ordered Harris to pay $300 per month towards restitution and applied Harris's $500 cash bond towards restitution.

Harris finished his term of active incarceration and returned to supervised probation on February 23, 2021. On April 19, 2021, Harris's probation officer filed a major violation report alleging that Harris had tested positive for cocaine on February 26, March 23, and April 12, 2021, and had not followed the probation officer's instructions to enroll in a substance abuse program. The violation report also stated that Harris still owed $47,412 in restitution. The trial court issued a *capias* for Harris's arrest on April 29, 2021.

At a revocation hearing on October 18, 2021, the probation officer testified that Harris did not make any of the monthly $300 restitution payments the trial court had ordered, and made a single restitution payment of $400 shortly before the hearing. Harris admitted that he had not completed his drug assessment appointment as directed, explaining that he had been in a car accident in early May 2021 and was hospitalized for about a week. Harris acknowledged that he

- 2 -

had three positive drug tests, although he denied using drugs since leaving the hospital. He also admitted that he had not completed a substance abuse assessment or communicated with his probation officer since before May 20, 2021. Harris testified that he was employed and planned to pay $100 towards restitution from each paycheck going forward.

After hearing the evidence and argument by counsel, the trial court found that Harris had violated the conditions of his suspended sentence and probation. The court reviewed the discretionary sentencing guidelines[1] and emphasized that the court had previously revoked two years of Harris's suspended sentence, resuspended all but thirty days, and ordered Harris to pay $300 per month towards restitution. Despite that order, Harris had paid only $900, including the cash bond the court had applied to restitution, and had not complied with the rules of probation. Accordingly, the court revoked two years of Harris's previously suspended sentence of seven years and set a "purge amount" of $10,000.

Harris moved the trial court to set aside the verdict and reconsider, arguing that because the "alleged violations of probation stated in the major violation report would be considered technical violations," the court did not have the authority to sentence him to more than fourteen days in jail. Harris acknowledged that a failure to pay restitution "would be considered a special condition violation" but argued that he had not received notice of that violation "as required by the due process clauses of the United States and Virginia Constitutions." The trial court denied the motion without a hearing. This appeal followed.

---

[1] The sentencing guidelines recommended a sentence of zero to fourteen days for Harris's positive drug tests and failure to follow the officer's directions.

ANALYSIS

I. Notice of failure to pay restitution

Harris argues that the trial court violated his due process rights by sentencing him to more than fourteen days of active incarceration because the major violation report "referred [only] to technical violations and made no reference to a failure to pay restitution." He acknowledges that the violation report stated that he owed restitution, but asserts that the report did "not allege a failure to make [restitution] payments as a basis for the probation violation." Accordingly, he maintains that he "was not fully prepared to defend against that allegation."

The approbate-reprobate doctrine prohibits a party from "taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). "The prohibition against approbation and reprobation forces a litigant to elect a particular position, and confines a litigant to the position that [he] first adopted." *Matthews v. Matthews*, 277 Va. 522, 528 (2009). Thus, litigants are precluded from "'playing fast and loose' with the courts" or "'blowing hot and cold' depending on their perceived self-interests." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 204 (2016) (first quoting *Wilroy v. Halbleib*, 214 Va. 442, 445 (1974); and then quoting *United Va. Bank v. B.F. Saul Real Estate Inv. Tr.*, 641 F.2d 185, 190 (4th Cir. 1981)). When a party has approbated and reprobated inconsistent positions, this Court will not consider the merits of the opposite position on appeal. *Nelson*, 71 Va. App. at 404-05 ("[Appellant] took one position and now affirmatively assumes an inconsistent position. Accordingly, [appellant's] position in the trial court below prevents us from considering an opposite position on appeal." (citation omitted)).

Here, the April 2021 major violation report explicitly stated that Harris still owed $47,412 in restitution. At the revocation hearing based on that report, Harris then presented evidence on

- 4 -

restitution, including testimony regarding his past payments and intent to make payments going forward. During closing argument, Harris expressly acknowledged that the "biggest issue" for the "victim of the embezzlement" was restitution. Harris also emphasized that he was employed and "ha[d] been making payments." Harris finally asked the trial court to consider restitution in ruling on his probation violations and to keep him on probation to ensure "more of that restitution gets paid." Thus, the record shows that Harris presented evidence on restitution at the revocation hearing, argued restitution in closing, and asked the trial court to consider restitution when fashioning its sentence. By now arguing that the trial court could not consider his failure to pay restitution during his revocation proceeding, Harris has approbated and reprobated inconsistent positions, and we will not consider the merits of his due process argument on appeal. *See Nelson*, 71 Va. App. at 404-05.

## II. Denial of motion to reconsider without a hearing

Harris argues that the trial court erred when it denied without a hearing his motion to set aside the verdict and reconsider. He contends that the "Constitutional ramifications related to a lack of proper notice" compelled the court to hold a hearing on his motion.

"We review a trial court's denial of a motion to reconsider for an abuse of discretion." *Winston v. Commonwealth*, 268 Va. 564, 620 (2004). A litigant "has no right to present oral argument on a motion to reconsider," and trial courts commonly dispose of such motions "on the pleadings, without a hearing, in criminal and in civil cases." *Amos v. Commonwealth*, 61 Va. App. 730, 741 (2013) (*en banc*), *aff'd*, 287 Va. 301 (2014). Here, given that Harris explicitly asked the trial court to consider the restitution issue during his revocation hearing, the trial court did not abuse its discretion by denying his motion that assumed a position inconsistent with the arguments and evidence he presented at the revocation hearing. *Cf. Berry v. Klinger*, 225 Va. 201, 207 (1983)

(holding that the approbate-reprobate doctrine prohibited a mid-trial change in position regarding the unambiguous nature of a contract).

### III. Revocation of suspended sentence

Finally, Harris argues that the trial court abused its discretion by revoking two years of his previously suspended sentence "based upon technical violations and a failure to make sufficient restitution payments." He contends that the recently enacted Code § 19.2-306.1 limited the permissible sentence for the technical violations alleged in the major violation report to fourteen days. *See* 2021 Va. Acts, Spec. Sess. I, ch. 538.

Code § 19.2-306.1 became effective on July 1, 2021, and does not apply to Harris's case. This Court recently held that, in a revocation proceeding, a trial court must apply "the law that was in effect when [the probationer] committed the relevant probation violations and also in effect when his revocation proceeding began." *Green v. Commonwealth*, 75 Va. App. 69, 85 & n.4 (2022).[2] Harris's probation officer reported on April 19, 2021, that Harris had tested positive for controlled substances and failed to pay restitution. On April 29, 2021, the trial court then issued a *capias* for Harris's arrest. Thus, Harris's probation violations occurred, and the revocation proceeding began, before the effective date of Code § 19.2-306.1. Under the operative terms of the revocation statute in effect when Harris's revocation proceeding began, once the trial court found that Harris had violated the terms of suspension, the court had to revoke his suspended sentence, and the original sentence was "in full force and effect." Code § 19.2-306(C)(ii) (2016). The trial court was permitted—but not required—to resuspend all or part of the sentence. *Id.*; *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002).

---

[2] At oral argument, Harris's counsel conceded that this Court's decision in *Green* is dispositive of his third assignment of error.

When fashioning its sentence, it was within the trial court's purview to weigh any mitigating factors Harris presented, including his car accident, subsequent hospitalization, employment, restitution payments, and expressed intent to continue paying restitution. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). However, the evidence also showed that Harris tested positive for cocaine three times—including once within three days of entering supervised probation—and that he had only made a single payment towards restitution and disregarded his probation officer's instructions to complete a substance abuse assessment. Harris does not dispute that the trial court had good cause to revoke his suspended sentence, as he conceded at the revocation hearing that he had failed drug tests and had not communicated with his probation officer as required. Harris also had not paid the amount of restitution the trial court had ordered at the prior revocation proceeding.

"When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). And as the trial court found that Harris continued to use cocaine and made only minimal restitution during the suspension period, it did not err in determining that Harris failed to make productive use of the grace extended to him. "For probation to have a deterrent effect on recidivism, real consequences must follow a probationer's willful violation of the conditions of probation." *Price*, 51 Va. App. at 449. We conclude that the sentence the trial court imposed represents such real consequences and was not an abuse of judicial discretion.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*