# COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Raphael and Senior Judge Clements
Argued at Loudoun, Virginia

WAYNE SHORTER

v.      Record No. 1904-22-4

DARIEN CHERRY, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE STUART A. RAPHAEL
NOVEMBER 21, 2023

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Angela L. Horan, Judge

Warner F. Young, III (Mahdavi, Bacon, Halfhill & Young, P.L.L.C.,
on briefs), for appellant.

Joseph W. Thelin (von Keller Thelin, on brief), for appellee Selena
Daniel.

No brief or argument for appellee Darien Cherry.

Wayne Shorter appeals the trial court's decision admitting a 2002 will to probate instead of

a 2021 will that named him as the primary and sole beneficiary. He argues that the trial court erred

by finding the 2021 will invalid. He also challenges two evidentiary rulings. He contends that the

testator's sister is an "interested party" under the Dead Man's Statute, Code § 8.01-397, and that the

trial court therefore erred by admitting her uncorroborated testimony. He adds that the trial court

should not have permitted her to testify about Shorter's reputation for dishonesty. Finding that

Shorter failed to preserve those evidentiary challenges and that the evidence supported the trial

court's finding that the 2021 will was invalid, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

JoAnne Cherry executed a will on January 24, 2002, naming her children as beneficiaries: Darien Cherry, Selena Daniel, and Ryan Cherry. Ryan died in June 2014. The parties agree that Cherry's will was validly executed. Cherry told her son Darien that the will was in her safe; he found it there and read it before her death. Cherry died on October 27, 2021. After Cherry's death, Darien found the 2002 will in the same place in the safe.

Sometime after 2002, Cherry moved to Virginia, where she met Wayne Shorter. Except for a few years, Cherry and Shorter lived together from the mid-2000s until Cherry's death.

Shorter alleges that Cherry drafted a will in 2021 using his computer. Cherry had her own computer and her own Legal Zoom account, to which Shorter had access. But he claims to have seen her create the will on his computer. The 2021 will named Shorter as Cherry's primary beneficiary and executor, erroneously stating that Cherry had no children.

On March 4, 2021, Cherry, Shorter, and Cherry's sister, Sherry Johnson, went to a UPS store. Shorter claimed that the purpose of that visit was to execute and notarize the 2021 will and an advance medical directive. Johnson testified, however, that Cherry had asked her to witness only an advance medical directive.

At the UPS store, Cherry presented the papers to the store's notary, Marvin Ventura, who reviewed them and returned them to her. Cherry and Johnson produced identification, and their information was logged into a notebook. Shorter claimed that, after Ventura "logged the handbook," Cherry signed and initialed the documents. Ventura then "gathered the documents" and presented them to Johnson, who also purportedly signed the will and advance medical directive. After Johnson signed, she returned the documents to the notary, who presented them to another UPS

---

[1] We state the facts in the light most favorable to Darien Cherry and Selena Daniel, who prevailed below. *Glynn v. Kenney*, 77 Va. App. 70, 73 (2023).

employee, Matthew Chavez. Chavez then signed the documents and Ventura notarized them. Ventura did not place Cherry, Johnson, or Chavez under oath, despite his notarized self-proving affidavit asserting that they all had been placed under oath. After the papers were signed and notarized, they were returned to either Cherry or Shorter. The documents were then kept in Shorter's office in a file cabinet.

After Cherry's death, her children petitioned the circuit court to admit the 2002 will to probate. Shorter petitioned the court to admit the 2021 will, instead. In November 2022, the parties appeared before the trial court on their petitions. The children offered the 2002 will into evidence without objection. In support of his cross petition, Shorter introduced the 2021 will.

At trial, neither Ventura nor Chavez could independently recall Cherry or Johnson's signing the will or advance medical directive. But relying on their habit and custom in witnessing and notarizing documents, they confirmed Cherry and Johnson's signatures on the will. Ventura and Chavez also identified their own signatures on the will and advance medical directive in their capacities as notary and witness. Relying on his seal, Ventura agreed that he notarized the "self-proving affidavit" that purportedly bore the names and signatures of Cherry, Johnson, and Chavez. Ventura conceded, however, that it was possible he was not given the entire will and that the self-proving affidavit could have been the only page presented to him. Ventura agreed that he acted improperly by notarizing the signatures on Cherry's advance medical directive when that document contained a blank signature block above the notary page. He also acknowledged that, despite swearing in the self-proving affidavit that he had administered oaths to Cherry and the witnesses, he "never" administered oaths when notarizing documents.

At trial, Johnson recalled only that her sister had asked that she witness Cherry's advance medical directive; Cherry never mentioned a will. Johnson denied that she was presented with a will at the UPS store. She stated with "[o]ne hundred percent" certainty that the signature next to

her name on the self-proving affidavit was not hers. Johnson testified that she signed her name only twice at the UPS store. Based on the writing style and the fact that her name was misspelled, Johnson knew that the signature on the self-proving affidavit was not hers. Johnson did not know of any will executed by Cherry in 2021. What is more, she testified that Shorter had a reputation in the community for being dishonest.

The children called Katherine Koppenhaver as a certified forensic document examiner with expertise in determining whether a signature is genuine. Koppenhaver testified "that the signature of Joanne Cherry" on the 2021 will was "not a genuine signature." She added that Cherry's purported initials on the 2021 will and her signatures on the self-proving affidavit and attestation clause were also not genuine. Koppenhaver had a "very high" level of certainty that those signatures were not authentic, and she said that her opinion would remain unchanged even if Johnson had identified her own signature on the attestation clause of the will. Koppenhaver studied multiple exemplars of Cherry's and Johnson's handwriting before forming her opinion. She noted that the signature of Cherry's name was missing some letters, and the shape and spacing of the letters differed from those on the exemplars. Koppenhaver also noted that Johnson's purported signature "contained tremor," indicating that it was written slowly and marked by a "wobbling effect." Koppenhaver explained that "tremor is indicative of non-genuineness." She said that, even if a notary professed to have witnessed Cherry and Johnson's signatures, Koppenhaver's opinion that they were not genuine would remain unchanged.

At the close of evidence, the trial court ruled that the 2021 will was not valid and admitted the 2002 will to probate. The court found that Johnson's testimony was credible and that the UPS employees could not vouch for the document and failed to administer oaths. Shorter noted a timely appeal.

ANALYSIS

*A. Evidentiary Rulings (Assignments of Error 1 and 2)*

Shorter contends that the trial court erred by admitting Johnson's testimony in violation of the Dead Man's Statute, Code § 8.01-397. He also claims that the trial court erred by admitting Johnson's testimony about Shorter's reputation for being dishonest.

An appellate court reviews a trial court's decision about the admissibility of evidence, including witness testimony, for abuse of discretion. *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 396 (2012). Although the trial court has discretion, it is not "free to simply act in any way it may deem desirable under the circumstances." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 92 (2021). Rather, "the circuit court 'has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 93 (quoting *Landrum v. Chippenham and Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).

As Shorter's counsel candidly acknowledged at oral argument, however, neither evidentiary objection presented on brief was preserved in the trial court. When the children argued that Johnson was not an "interested party" under the Dead Man's Statute because she had no pecuniary interest in the litigation, Shorter offered no argument or explanation in response. Nor did Shorter object when Johnson was asked about "Shorter's reputation for truth and veracity in the community," and Johnson answered that Shorter had a "[r]eputation of being dishonest." "One of the tenets of Virginia's jurisprudence is that trial counsel must timely object with sufficient specificity to an alleged error at trial to preserve that error for appellate review." *Perry v. Commonwealth*, 58

Va. App. 655, 666 (2011). Having failed to object contemporaneously, Shorter waived his evidentiary objections. *See* Rule 5A:18.[2]

### B. Sufficiency of the Evidence (Assignments of Error 3 through 6)

Shorter also challenges the sufficiency of the evidence supporting the trial court's finding that the 2021 will is invalid. "When a trial court renders judgment after a bench trial, we cannot set aside that judgment as contrary to the evidence 'unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'" *Moncrieffe v. Deno*, 76 Va. App. 488, 496 (2023) (quoting Code § 8.01-680). "When judges sit as factfinders, 'no less than jurors,' we give their determinations 'the highest degree of appellate deference.'" *Id.* (quoting *Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017)). "We likewise 'view the evidence and all reasonable inferences drawn from it in the light most favorable to . . . the prevailing party at trial.'" *Id.* (alteration in original) (quoting *Palmer*, 294 Va. at 159). "In assessing whether the evidence supported the trial court's decision, 'our appellate review "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling."'" *Id.* (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 566 (2016)).

"In a probate proceeding the burden is on the proponent to show by a preponderance of the evidence that the purported will was written and executed in the manner prescribed by statute." *Canody v. Hamblin*, 295 Va. 597, 603 (2018) (quoting *Wilroy v. Halbleib*, 214 Va. 442, 447 (1974)). Assuming that "the proponent of a will . . . prove[s] compliance with [the] statutory requirements for the execution of a will," the burden shifts to the challenger to prove fraud. *Id.* at 605. "The party alleging fraud [or forgery] bears the burden of proving it" by clear and convincing evidence. *Id.* at 603; *see also Gulfstream Bldg. Assocs., Inc. v. Britt*, 239 Va. 178, 183 (1990) ("A

---

[2] Shorter does not ask that we consider his argument under Rule 5A:18's ends-of-justice or good-cause exceptions, and "we will not invoke them *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

finding of extrinsic fraud on the court must be supported by clear and convincing evidence."); *Martin v. Williams*, 194 Va. 437, 445-46 (1952) (same). "[C]lear and convincing evidence is 'that degree of proof which produces in the mind of the trier of facts a firm belief or conviction upon the allegations sought to be established. It is intermediate proof, more than a mere preponderance but less than proof beyond a reasonable doubt.'" *Amstutz v. Everett Jones Lumber Corp.*, 268 Va. 551, 559 (2004) (quoting *Oberbroeckling v. Lyle*, 234 Va. 373, 379 (1987)).

Whether a testator's signature is genuine presents a "factual question." *Wilroy*, 214 Va. at 447. When conflicting evidence is presented about the authenticity of a testator's signature, the credibility of the witnesses and the weight to be attached to their testimony are questions to be resolved by the trial court in its role as fact finder. *Id.* We will not disturb the trial court's factual determinations unless they are "plainly wrong or without evidence to support [them]." *Moncrieffe*, 76 Va. App. at 496 (quoting Code § 8.01-680).

Shorter contends that he met his burden under Code § 64.2-403(C) to prove the validity of the 2021 will. He says that the evidence proved that the 2021 will was signed by Cherry in the presence of three competent witnesses and "[a]t least two of the witnesses subscribed the will in the presence of Ms. Cherry." Shorter stresses that the UPS employees described their procedure for document signings. Based on their custom and habit, Shorter argues, the UPS witnesses established that "the will was properly signed by the testator and attested [to] and subscribed by the witnesses." He asserts that, "[c]ontrary to the [t]rial [c]ourt's ruling, the witnesses and notary are not required to read the will and no oaths are required." Without identifying where in the record the trial court issued such a ruling, he contends that the trial court rejected the 2021 will because Johnson testified that she did not know what she was signing and because she denied seeing her sister sign it. Shorter argues that he carried his burden because he proved "two witness signatures on the will in the presence of the testator."

Assuming without deciding that Shorter met his burden with respect to the statutory requirements for the 2021 will, there was enough evidence for the trial court to find by clear and convincing evidence that the signatures on the will by Cherry and Johnson were forged. Koppenhaver provided uncontroverted expert testimony that the signatures were not authentic, and Johnson denied that the signature on the self-proving affidavit was hers. She further testified that Cherry never asked her to witness a will on March 4, 2021, only an advance medical directive. And the trial court found Johnson's testimony credible.

Shorter presented no expert evidence to counter Koppenhaver's opinion, relying instead on the testimony of the two UPS employees. But the trial court was entitled to place little weight on their habit-and-custom testimony. The UPS employees could not independently recall the will's execution, and their description of that day depended solely on their typical practice when conducting document signings. They also admittedly failed to follow appropriate notary procedures. Thus, the trial court could reasonably discredit their testimony, crediting instead Koppenhaver's opinion that Cherry's signature was forged and Johnson's certainty that the signature on the self-proving affidavit was not hers.[3]

CONCLUSION

Viewed as a whole, the record provided clear and convincing evidence to support the trial court's decision that the signatures by Cherry and Johnson on the 2021 will were forged. Accordingly, the trial court did not err by rejecting the 2021 will and admitting the 2002 will to probate.

*Affirmed.*

---

[3] As we affirm the trial court's judgment in favor of the children, we need not address the children's assignment of cross-error that the trial court erred by denying their motion *in limine*.