25891.   NEWTON et al. v. HIGDON et al.

ARGUED JULY 14, 1970—DECIDED SEPTEMBER 10, 1970.

*O'Kelley, Hopkins & Van Gerpen, Thomas P. Gresham,* for appellants.

*Harris, Rolader & Simmons, Robert B. Harris,* for appellees.

NICHOLS, Justice.   A conformed copy of a will was filed for probate and probate ordered by the ordinary.   A caveat having been filed, the caveators appealed to the superior court where the jury found for the propounders and against the caveators and it is from this judgment that the present appeal is filed. The evidence showed the will of the deceased was not located after her death and that the will offered for probate was a carbon copy of a will prepared by a law firm not representing either side in the present controversy.

1.   During the trial of the case an attorney with the law firm which purportedly prepared the will for the deceased testified as to the practice by such firm in preparing wills, and that while he did not remember the circumstances under which the will in controversy was executed he did not remember any occasion when the usual practice was not followed.   The usual practice followed was for the client to go into the attorney's private office and review the will previously prepared by the firm, and when the client was satisfied that the will was completed in accordance with the client's desires, two secretaries were called into the office and the will executed by the client and witnessed by the attorney and the secretaries each in the presence of the others and then one of the secretaries would write the names, dates, etc., on one of the copies and later type this same information on a copy.   After testifying that the procedure never varied and that he never witnessed a will of a client who he did not think was mentally capable of executing a will he was asked: "From having examined the records

of your firm, is there any doubt in your mind whatsoever that on May 12, 1965, you together with Miss Nix and Mrs. Black, were witnesses to the will of Ebbie Jane Moore?" Objection was made to such question as calling for a conclusion. The objection was overruled.

"That a witness may refer to a written instrument, memorandum or entry in his books, to refresh or assist his memory, is a well established rule of evidence; and even where the witness has no recollection of the fact, independent of the entry in his books, but will testify as to his uniform practice to make his entries truly, and at the time of each transaction, and will further state he has *no doubt*, from such practice, that the entry in question is correct, his testimony is admissible; for then the witness speaks upon his own responsibility, under the legal sanction of his oath, his memory being refreshed by the entry in his book or memorandum, the same having been made in accordance with his known habit and practice. 1. Greenlf. Ev. §§ 436, 115. Merrill vs. the Ithaca and Oswego Rail Road, 16 Wendell's Rep. 5 and 6. Bank of Monroe vs. Culver, 2 Hill's N. Y. Rep. 531." *Williams v. Kelsey & Halsted*, 6 Ga. 365, 373; *Code* § 38-707. Compare *Adams v. Adams*, 213 Ga. 875 (2) (102 SE2d 566). The objection was properly overruled, and the appellant's 5th enumeration of error is without merit.

The sixth enumeration of error which raised the identical question as to the testimony of one of the witnesses is likewise without merit.

2. Under the decision in *Sheffield v. Sheffield*, 215 Ga. 546, 551 (111 SE2d 218), the testimony of Helen Massey Higdon, objected to as hearsay, was clearly admissible. However, even if such evidence had not been admissible the caveators elicited the same testimony from such witness on cross examination. See *Gaskins v. McCranie Timber Co.*, 225 Ga. 280, 283 (168 SE2d 311). Enumerations of error 7 and 8 are without merit.

3. Enumerations of error numbered 9 through 12 complain of the admission of documentary evidence. The evidence complained of in enumeration of error numbered 9 is a file of a law firm showing a record of transactions, etc., with the deceased, it was properly testified to as a business record under

the provisions of *Code Ann.* § 38-711 and clearly admissible. The remaining documentary evidence objected to was stipulated to be business records as defined in *Code Ann.* § 38-711. Under such stipulations these records were admissible in evidence over the objection that they were without probative value. These enumerations of error are without merit.

4. Testimony as to declarations of the deceased that she did not want a named person to benefit from her property not made in connection with any intent to make or revoke a will does not come within the exception to the hearsay rule referred to in *Sheffield v. Sheffield,* 215 Ga. 546, supra. Accordingly, enumeration of error numbered 13 complaining of the exclusion of such evidence shows no reversible error.

5. Enumeration of error numbered 14 complains that the trial court did not give a requested charge in the language requested. The trial court modified the requested charge by deleting portions which he properly concluded were argumentative. No error is shown by this enumeration of error.

6. The remaining enumerations of error all relate to the sufficiency of the evidence to authorize the verdict. The propounders introduced evidence to authorize the jury to find that the deceased properly executed the will on the date shown before the required number of witnesses, etc. The real question argued by the caveators is whether the propounders overcame the presumption that the deceased revoked the will.

The evidence disclosed without dispute that the deceased shot herself on August 21, 1968, was admitted to Grady Hospital and was a patient there until September 9, 1968, when she was transferred to the Georgia Mental Health Institute and later to Emory University Hospital where she died on October 13, 1968.

The propounders presented evidence that the deceased told Roy Edmonds of her will and contents thereof and its location in her home on August 23, 1968, and again talked about it to him on September 7, 1968. On cross examination this witness was doubtful as to whether the second conversation took place one week or two weeks after the original conversation but he definitely placed the time as being the Saturday before she was transferred from Grady, which would have been on September 7, 1968.

'There was also testimony that on August 26 or 27 the locks were changed on the home of the deceased, and that she did not have a key thereto and that only Claude Bynum had access to the home, and there were no signs of forcible entry into such home either before or after her death. There was also testimony that on September 4th or 5th Claude Bynum met the deceased in the lobby of Grady Hospital at approximately 7 a.m. and took her to her home and returned her to the hospital 50 to 70 minutes later, that while she was in her home the witness went into the basement and left her on the main floor of the home where the will was allegedly located. The records of Grady Hospital on each of such dates show entries of the presence of the deceased at the hospital at both 7 and 8 on both days in question and no record of her departure for any period of time on either day. There was also testimony of the deceased saying that she did not have a will shortly before as well as after she shot herself.

Admittedly, the evidence would have authorized a verdict for the caveators but it did not demand such a verdict. Whether the propounders carried the burden of overcoming the presumption that the original of the will was revoked by being destroyed was one for the jury. From the verdict it must be assumed that the jury believed the evidence presented by the propounders and that the presumption was rebutted. This case is distinguishable on its facts from *Scott v. Maddox*, 113 Ga. 795 (39 SE 500, 84 ASR 263), relied upon by the caveators for there the uncontradicted evidence disclosed a period of time when the deceased had access to the will after acknowledging the will existed while in the present case the evidence did not demand a finding that the deceased had access to the will at any time after acknowledging its existence and giving instructions to one of the devisees as to its location, etc.

The remaining enumerations of error show no reversible error and the judgment of the trial court must be affirmed.

*Judgment affirmed. All the Justices concur. Felton, J., concurs specially as to Division 2.*