## Richmond

## GEORGE FELIX ASHLEY, JR.

### v.

## COMMONWEALTH OF VIRGINIA

January 11, 1980.

Record No. 790025.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Archer L. Jones, II (Jones and Jones, P.C.,* on brief), for appellant. *Linwood T. Wells, Jr., Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Tried upon an indictment charging him with grand larceny, George Felix Ashley, Jr., was found guilty by a jury, which fixed his punishment at a fine of $1,000; judgment was entered upon the jury verdict. The sole question raised by Ashley on appeal is whether certain testimony which the trial court admitted over his objection constituted inadmissible hearsay.

On November 22, 1976, the management of I.T.T. Gwaltney, Inc., at Smithfield, discovered that some cooked hams were missing. Lee Marshall, the company's Security Director, examined 20 empty ham boxes lying on the loading dock. He wrote down the weights stamped upon the sides of the cartons, and then reviewed the report of an inventory taken on the preceding Saturday, November 20, to confirm the absence of the 20 hams. Marshall testified that the total weight of the missing hams, as shown by the notations stamped upon the empty boxes, was 249 pounds, 3 ounces, with a total value as shown on the inventory of $712.14. The inventory records were no longer in existence at the time of trial.

Ashley, a Gwaltney employee who had been working at the plant over the weekend, had access to the hams. On December 16, 1976, he was questioned by Marshall and two police officers. Ashley signed a statement in which he asserted that during the preceding 30 days he had purchased from the Gwaltney ham store, maintained for the benefit

of employees, seven hams varying in price from $16 to $26 each that he had sold to friends in North Carolina. He also stated that he had in his possession six hams that he had purchased at the ham store on two occasions approximately one week before Thanksgiving for more than $20 each; and that he did not order the hams in advance, but purchased them, unboxed, off the shelf at the store. When discrepancies in his statement were called to his attention, Ashley made no attempt to explain his answers and finally said, "I guess you caught me in another lie".

Marshall and the officers accompanied Ashley to the trailer where he resided; his refrigerator contained six unboxed hams corresponding to six of the missing hams described on the inventory. One of the police officers testified that later in the day when he expressed surprise at Ashley's conduct, Ashley replied, "When it is all over I will tell you how I done it". Photographs of the six hams were introduced into evidence.

A witness for the Commonwealth testified that he had twice purchased unboxed cooked hams from Ashley in October or November, the first time acquiring two, and later another five, for $18 each. According to this witness, Ashley explained that he had bought the hams from Gwaltney at a favorable price because they had not been sold by a specified deadline.

The manager and the cashier of the Gwaltney ham store testified to the procedure followed in selling hams. All hams purchased by employees were ordered in advance pursuant to order blanks signed by the purchasers, and all hams sold through the store were packaged in individual cartons. The manager said that Ashley had not purchased any hams, and that the cooked hams had a value of approximately $2.65 per pound at the time the missing hams were taken.

■ Ashley, who offered no evidence at trial, contends that the trial court committed reversible error in admitting, over his objection, Marshall's testimony as to the loss, weight, and value of the hams. This testimony, Ashley argues, was based upon business records that Marshall did not maintain, rather than upon his personal observation, and was not admissible under the modern Shopbook Rule, which is an exception to the hearsay evidence rule. He relies upon *Boone* v. *Commonwealth,* 213 Va. 695, 697, 194 S.E.2d 689, 690 (1973).

Ashley has misconstrued *Boone.* We held in that case, and in *Neeley* v. *Johnson,* 215 Va. 565, 571, 211 S.E.2d 100, 106 (1975), that the exception *generally* is limited to facts or events within the personal knowledge of the recorder to which he could testify if called as a witness. But the general application of the exception is not universal. We

have approved the qualification advanced by Wigmore, 5 Wigmore on Evidence § 1530, at 451 (Chadbourn rev. 1974), that an entry made by one in the regular course of business, recording an oral or written report made to him by other persons in the regular course of business, of a transaction within the personal knowledge of such other persons, is admissible upon verification by the person making the entry. *Sprinkler Corp.* v. *Coley & Peterson,* 219 Va. 781, 792-93, 250 S.E.2d 765, 773 (1979).

We pointed out in *Sprinkler Corp.* that in many cases practical necessity requires the admission of written factual evidence not based upon the personal knowledge of the recorder. There, we stated as the relevant test whether "the documents sought to be introduced are the type of records which are relied upon by those who prepare them or for whom they are prepared", after noting that "[t]he trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the person or entities for which they are kept". *Id.* at 793, 250 S.E.2d at 773. In *Sprinkler Corp.,* the person who compiled original time sheets from which others prepared payroll records in the regular course of business was deceased at the time of trial. Nevertheless, we held that the payroll records were admissible because the company prepared and relied upon them in the regular course of business.

■ In the present case, Marshall testified from a report which he compiled in the regular course of employment as a security director, both from inventory taken and maintained by other employees in the regular course of business and from his own personal calculation of the weights recorded on the empty ham boxes. Marshall verified the accuracy of his recollections, but the inventory itself, which would have been the best evidence, had not been preserved. While the report itself was not admitted into evidence, it nevertheless constituted an admissible business record under the rationale of *Sprinkler Corp.* The report from which Marshall testified served to record past recollections, allowing his oral testimony to be admissible under that familiar exception to the hearsay rule. McCormick on Evidence §§ 299, 302 (2d ed. 1972).

■ The trustworthiness of Marshall's recordation of information taken from the inventory and from the notations on the empty ham boxes is also established by other evidence in the record. Marshall's personal observation revealed that 20 ham boxes were empty and the hams were missing. There was evidence that Ashley had sold seven hams in North Carolina and seven hams to the witness who purchased

them in two transactions, and that he had six unboxed hams in his possession within a month after the 20 hams were removed from the Gwaltney plant. Ample evidence showed that the value of the hams exceeded $100, and ample evidence rebutted Ashley's explanation of his acquisition of the hams. Indeed, Ashley's own remark, related at trial by one of the investigating officers, that he would later explain how he "done it", could reasonably be inferred to be an admission of guilt.

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*