## Richmond

CORNELIUS MARCELLUS JAMES

v.

COMMONWEALTH OF VIRGINIA

No. 0774-87-2

Decided April 18, 1989

COUNSEL

John H. McLees, Jr., Public Defender, for appellant.

Frank S. Ferguson, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLE, J.**—The appellant, Cornelius Marcellus James, was convicted by a jury of burglary, abduction, rape, forcible sodomy, and robbery. The issues on appeal are: (1) whether James' arrest was lawful, and (2) whether the trial court erred in excluding the past recollection recorded of witness Dr. Lynn Smith. We find the arrest lawful, but also find that the court erred in excluding portions of Dr. Smith's testimony. Because we cannot find that the error was harmless, we reverse and remand.

On October 17, 1986, off-duty police officer Duncan Pence was working in uniform as a security guard at the Bramblewood Estates apartment complex. Pence had been hired because of a rash of rapes, "peeping toms," and trespassing incidents at Bramblewood and a nearby complex. The Bramblewood property was posted with "no trespassing" signs at each of its four corners. At the front entrance was a sign indicating that Bramblewood was private property and that soliciting was prohibited. Pence testified that he routinely stopped anyone on the property whom he did not know, though the only person arrested for trespassing during Pence's six-month tenure at Bramblewood was James.

At approximately 11 p.m. on October 17, Pence saw a black male, whom he later identified as James, walking in the same direction as a woman who had just exited her car. Pence testified that he considered James' presence suspicious because of the rapes

that had occurred at Bramblewood. James fled when Pence approached him, identified himself as a police officer, and asked to speak with him.

Pence radioed other police units that he was in pursuit of "our Peeping Tom party." He testified that by the use of this phrase he meant the person suspected in the recent rapes as well as the peeping incidents. Officer Barry Bland, who had heard Pence's radio message, spotted James behind a Safeway store. He asked James to produce some identification. James had none with him, but gave Bland his name, address and social security number. Bland verified the information by radio contact with the Department of Motor Vehicles and learned there were no outstanding warrants. He then let James go, though he testified that he never lost sight of James after the release. In response to a radioed command from Pence to "hold on to him" and "pick him up," Bland stopped James again and told him that another officer wished to see him. James voluntarily agreed to ride with Bland to see the officer.

Upon seeing James, Pence identified him as the man he had approached in the Bramblewood complex. Pence and other officers examined James for stab wounds on his face and back because he fit the description of a rapist who had been stabbed by the victim. No stab wounds were found at this point. James was arrested for trespassing. He later was charged in three rape incidents, one of which is the subject of the appeal before us.[1]

After James' arrest, hair, saliva and blood samples were taken from him by police. His face, hands, and scars on his back were photographed. He was picked from a lineup by Lola Linardos as the man who had attacked her on June 1, 1986. The trial court denied James' pre-trial motion to suppress this evidence.

At James' trial on the charges involving Linardos, the victim testified that on the evening of June 1, 1986, she was home alone except for her seventeen month old baby. Though Linardos had checked the locks on all the windows and doors in the apartment, a man climbed in through a window while she was in the shower. When Linardos emerged from the shower, the man pulled her into

---

[1] We affirmed James' convictions in the two other cases, *James v. Commonwealth*, Record No. 0902-87-2, and *James v. Commonwealth*, Record No. 0775-87-2.

the bedroom of her sleeping child. There he forced her at knife-point to perform oral sodomy, attempted anal intercourse with her, and raped her. The man had wrapped a towel around Linardos' face, but she testified she was able to see his face when the towel slipped. He asked where her money was and forced her into her bedroom. He left after taking approximately $70 from Linardos' purse and her baby's piggy bank.

After reporting the incident to police, Linardos went to a hospital emergency room where she was examined for evidence of the sexual assault. The examining physician, Dr. Lynn Smith, wrote in her notes: "Pt. did not see assailant but reports he was black [because of] 'coarseness of his hair.'" Smith testified she had no independent recollection of examining Linardos or of her making the foregoing statement. The trial court refused to admit the notes as past recollection recorded and allow Smith to testify from them. James was subsequently convicted.

## I.

James raises three points in support of his assertion that his arrest was unlawful. He contends that (1) there was no probable cause for his arrest for trespassing; (2) the trespassing arrest was a pretext to allow police officers to search James for evidence of the rapes; and (3) the warrantless arrest was for a misdemeanor not committed in the presence of the arresting officer. We find no merit in these arguments.

The test for probable cause to justify a warrantless arrest is "whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense had been committed." *DePriest v. Commonwealth*, 4 Va. App. 577, 583-84, 339 S.E.2d 540, 543 (1987)(quoting *Bryson v. Commonwealth*, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970)), *cert. denied*, 109 S. Ct. 541 (1988). The facts show that officer Pence could have had a reasonable belief that James was trespassing. Bramblewood was posted with signs identifying the property as private and forbidding trespassing. Pence saw James acting in a suspicious manner. He did not know James, so he approached him, identified himself as a policeman, and asked to talk to him. James turned, looked at the uniformed officer, and fled.

■ We hold there was probable cause for James' arrest for trespassing. Having made this determination, we also reject James' argument that the arrest was a pretext to allow investigation of the rape incidents. The police may use the opportunity presented by a legal arrest to learn more about crimes for which they have no probable cause to arrest. *Horne v. Commonwealth*, 230 Va. 512, 517, 339 S.E.2d 186, 190 (1986).

James' final contention is that his arrest was unlawful because it was for a misdemeanor not committed in the presence of the arresting officer. Code § 19.2-81. However, the record contradicts James' claim that he was arrested by Officer Bland. James was asked whether he would accompany Bland in the police car to speak to another officer and he agreed. James was arrested by Pence after Pence identified him as the person he had seen trespassing. Thus, the warrantless arrest was lawful.

## II.

■ We next address James' argument that the trial court should have allowed Dr. Smith to testify from her notes about statements Linardos made during her examination at the hospital. The general rule of past recollection recorded allows, over a hearsay objection, a witness with no independent recollection of an incident to testify directly from notes or reports if certain requirements are met. C. Friend, *The Law of Evidence in Virginia* § 18(b) (3d ed. 1988); *McCormick on Evidence* § 299 (3d ed. 1984). The requirements for this hearsay exception are: (1) the witness must have had firsthand knowledge of the event; (2) the written statement must be an original memorandum made at or near the time of the event, when the witness had a clear and accurate memory of it; (3) the witness must lack a present recollection of the event; and (4) the witness must vouch for the accuracy of the written memorandum. *McCormick, supra* § 299.

This exception to the hearsay rule, however, apparently has yet to be clearly articulated in the Commonwealth. Friend, *supra* § 18(b). However, our research reveals a few cases which we feel confirm the existence of the exception in Virginia.

*Grady v. Fauls*, 189 Va. 565, 53 S.E.2d 830 (1949), involved the testimony of a handwriting expert who had studied two conflicting wills allegedly made by the decedent, Kelley. The expert

told the court he had worked on many cases since examining the Kelley wills and would be unable to testify without reference to his notes. The trial court held that he could consult the notes on the stand but must not read them verbatim.[2] The Supreme Court affirmed, observing that "[t]he ruling of the court on this question followed the law and the uniform practice in Virginia. Under it the expert was permitted to use and refer to his notes which were personally made by him." *Id.* at 572, 53 S.E.2d at 833.

In *Farmer v. Commonwealth*, 205 Va. 609, 139 S.E.2d 40 (1964), a state trooper testified from memory as to certain circumstances of the defendant's arrest for speeding. However, the trooper admitted on cross-examination he could not recall the identity of the defendant's truck from memory but had testified to these facts by referring to the speeding ticket and his notes. The Supreme Court held that the testimony was properly admitted because "at the time and in the performance of his duties he made a correct record of such details and from that record his memory was refreshed." *Id.* at 611, 139 S.E.2d at 42.

Neither *Grady* nor *Farmer* refer to the applicable rule as the past recollection recorded exception to the hearsay rule, and *Farmer* actually speaks of refreshment of the trooper's memory. Until recently, courts in many jurisdictions tended to blur the distinction between past recollection recorded and present recollection refreshed. *McCormick, supra* § 299; 3 *Wigmore on Evidence* §§ 735, 736 (Chadbourne rev. ed. 1970). The facts in both *Grady* and *Farmer* indicate the witnesses had no present recollection to be refreshed or revived; each testified only by virtue of the accurate memorandum he made at the time of the event. We are satisfied that the principle at work was that of the past recollection recorded exception to the hearsay rule.

Finally, in *Ashley v. Commonwealth*, 220 Va. 705, 261 S.E.2d 323 (1980), a company official testified from a report as to the weight and value of twenty stolen hams. The official had compiled the report himself through both personal observation and the use

---

[2] After the expert's testimony, opposing counsel asked that the record reflect that the expert actually had read three-fourths of his testimony. The Supreme Court, however, stated that it would presume the expert had used his notes as directed by the court, leaving open the question of whether a witness might under some circumstances be allowed to read his notes into evidence. Some jurisdictions allow this. *See, e.g., State v. Corn*, 307 N.C. 79, 82-83, 296 S.E.2d, 261, 264-65 (1982).

of inventory records maintained by other employees. *Id.* at 706-07, 261 S.E.2d at 324. "The report from which Marshall testified served to record past recollections, allowing his oral testimony to be admissible under that familiar exception to the hearsay rule." *Id.* at 708, 261 S.E.2d at 325; *see also Evans v. Commonwealth*, 215 Va. 609, 212 S.E.2d 268 (1975).

In the case before us, Dr. Smith testified that she had no present memory of her examination of Linardos and that her memory could not be refreshed by reviewing the notes. However, she identified the handwriting and signature on the notes as her own, and stated that she always followed the same procedure in examining and interviewing patients. Part of this procedure was to enclose any direct quotes in quotation marks.

The trial court refused to allow Dr. Smith to testify as to whether the notes were accurate. This was error. The witness made the notes and she was the only person able to judge their accuracy. In *State v. Tharp*, 284 So. 2d 536 (La. 1973), the Lousiana Supreme Court observed:

> It is the record itself which is the admissible evidence of past recollection recorded. In such instances the witness has no independent testimony of the recorded information, but actually vouches for the accuracy and veracity of the record. The witness swears to the truth and accuracy of his habits in recording information.

*Id.* at 542; *see also Primeaux v. Kinney*, 256 So. 2d 140, 144 (La. App.)(state trooper had no recall of information in report; his assertion that he would not have used it if inaccurate sufficient proof of accuracy), *cert. denied*, 260 La. 1065, 258 S.E.2d 87 (1972); *Newton v. Higdon*, 226 Ga. 649, 650, 177 S.E.2d 57, 59 (1970)(attorney testified he always followed uniform practice in executing, attesting wills).

Dr. Smith's previous testimony indicated she may have been able to vouch for her notes because she had a habit of always conducting interviews in the same manner. The fact that the notes were written as the patient spoke also suggests reliability. *See State v. Corn*, 307 N.C. 79, 82-83, 296 S.E.2d 261, 264-65 (1982)(autopsy report dictated by doctor at autopsy performed admissible as past recollection recorded). This reliability is not

lessened by the fact that some parts of the notes are direct quotes from Linardos and some paraphrase what she told the doctor. Had Dr. Smith been allowed to establish the accuracy of her notes, her testimony would have been admissible because the other three prerequisites for past recollection recorded had been met. *McCormick, supra* § 299. This evidence was crucial to the defense. Linardos testified that the man who attacked her wrapped a towel around her face, but she was able to see his face when the towel slipped. Dr. Smith wrote in her notes: "Pt. did not see assailant but reports he was black [because] 'coarseness of his hair.' " This conflicting evidence might have had a substantial influence on the jury in weighing the testimony of Linardos. We cannot say that omission of her evidence was harmless error.

The case is remanded for a new trial, with directions that the trial court consider the admission of Dr. Smith's testimony in light of the principles stated herein.

*Reversed and remanded.*

Baker, J., and Duff, J., concurred.