COURT OF APPEALS OF VIRGINIA

Present: Judge Humphreys, Senior Judges Hodges and Overton
Argued at Chesapeake, Virginia


HAROLD KENNETH DICKERSON, III

                                        MEMORANDUM OPINION* BY
v.    Record No. 1332-99-1          JUDGE ROBERT J. HUMPHREYS
                                             JUNE 13, 2000
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                    S. Bernard Goodwyn, Judge

        James B. Melton for appellant.

        Amy L. Marshall, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


     Harold Kenneth Dickerson, III was convicted in a bench

trial of possession of cocaine and possession of marijuana.  In

this appeal, we consider whether the trial court erred in

denying a motion to suppress evidence seized following an

investigatory detention and subsequent arrest of Dickerson.

Finding no error in the denial of the motion to suppress, we

affirm.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to the

disposition of the appeal.

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

I.  BACKGROUND

On August 14, 1998, Officers John Hildebrand and Michelle Hunter of the Chesapeake Police Department were patrolling the area of Maplewood Apartments.  The officers observed Dickerson, accompanied by a juvenile, walking on Maple Field Drive in the apartment complex.

Maplewood Apartments, by letter, had granted to the Chesapeake Police Department the authority to enter its property to investigate criminal activity in the apartment complex, specifically including drug activity and trespassing.  The apartment complex also posted "No Trespassing" signs throughout the complex, including several on Maple Field Drive.

Both officers testified that they were community police officers assigned to the area of Maplewood Apartments and were familiar with the residents.  They knew the juvenile was a resident of a neighboring community, and they also knew that Dickerson was not a resident of Maplewood Apartments because they had previously given him a ride to his home in the City of Portsmouth.

The officers approached Dickerson and his companion and asked them if they were visiting anyone in the Maplewood Apartments complex.  Neither of them was able to provide the officers with the name or address of a resident.  Rather, Dickerson responded by simply gesturing toward the rear of the apartments, approximately one-eighth mile away.

-

The officers then asked Dickerson and his juvenile companion to get into their police car so that Dickerson and his companion could direct the officers to the apartment they had been visiting. The officers testified that they detained Dickerson and his juvenile companion as trespassing suspects in order to investigate further. The officers further testified that if it turned out that Dickerson and his companion were able to confirm that they had been visiting a resident, they would have been free to go.

The officers never communicated their state of mind to Dickerson or his companion as to their custody status. Dickerson was not restrained or handcuffed. He testified that he believed he was free to leave if he chose to do so.

Dickerson's juvenile companion entered the back seat of the officers' police car. Dickerson then moved toward the car as if he were going to enter it but then became "visibly shaken and nervous" and waived his arms in the air and began to turn from the car. Believing that Dickerson was about to run, Hunter grabbed his arm and a violent struggle ensued. Dickerson was eventually subdued by the officers and placed under arrest. In a search of Dickerson incident to that arrest, the officers recovered a plastic baggie containing marijuana and four plastic baggies containing cocaine.

Dickerson testified that he told the officers that he was visiting a friend named Jay and that while he did not give them

-

a specific address, he told them how to find Jay's apartment. Dickerson further testified that the officers asked him to accompany them on foot to the apartment and as he and his juvenile companion turned to walk towards the apartments, Hunter grabbed him. Dickerson denied that he was trying to get away and contended that he was just trying to get the officers off of him.

## II. ANALYSIS

When we review a trial court's denial of a suppression motion, "[w]e review the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). While we are bound to review de novo the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error[1] and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

"Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based

---

[1] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'" McGee v. Commonwealth, 25 Va. App. 193, 198 n.1, 487 S.E.2d 259, 261 n.1 (1997) (en banc) (citations omitted).

-

upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citation omitted).

"[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). A Terry stop occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." Id.

We recognize that the trial court and the parties analyzed the initial stop as a Terry stop. However, we find that the officers' initial approach of and questions posed to Dickerson and his companion regarding the identity of the resident that Dickerson and his companion were visiting constituted a consensual encounter that did not implicate the Fourth Amendment. See Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (questioning by police officers does not

-

implicate Fourth Amendment as long as citizen voluntarily cooperates). Only when the officers learned that Dickerson and his companion could not specifically identify the resident they were visiting, causing the officers to investigate further by requesting that Dickerson and his companion enter the police car, did the consensual encounter become an investigatory detention which must have been supported by a reasonable articulable suspicion of criminal activity.

"If a police officer has a reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee v. Commonwealth, 25 Va. App. 193, 202, 487 S.E.2d 259, 263 (1997) (en banc). Reasonable suspicion is a "'particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas, 517 U.S. at 696 (citation omitted).

We find that the officers' knowledge that Dickerson and his juvenile companion, whom they knew, did not live on the property, coupled with the inability of Dickerson and his companion to specifically identify the person they were allegedly visiting, provided the officers with a reasonable

-

articulable suspicion that Dickerson and his companion were possible trespassers, thereby warranting further investigation.[2]

Therefore, we conclude, as did the trial court, that the initial stop and investigative detention were constitutionally permissible. We now must turn our attention to the issue of whether the officers' request for Dickerson to accompany them in their police car was unreasonable and exceeded the bounds of a permissible <u>Terry</u> stop and whether the officers were justified in physically preventing Dickerson's departure from the scene, and in subsequently arresting and searching him.

"When 'evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.' The test is whether the police methods were calculated to confirm or dispel the suspicion quickly and with minimal intrusion upon the person detained." <u>Washington v. Commonwealth</u>, 29 Va. App. 5, 15, 509 S.E.2d 512, 517 (1999) (<u>en</u> <u>banc</u>) (citation omitted).

Here, the evidence, taken in the light most favorable to the Commonwealth, established that the officers possessed reasonable suspicion to detain Dickerson long enough to verify his guest status in the apartment complex and to release him

---

[2] Code § 18.2-119 provides in pertinent part that "[i]f any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, <u>after having been forbidden to do so . . . [or] after having been forbidden to do so by a sign or signs posted . . . shall be guilty of a Class 1 misdemeanor</u>." (Emphasis added.)

-

once that had been done.  When Dickerson was unable to identify the name or address of the person he was allegedly visiting, the method employed by the officers to locate that person was calculated to confirm or dispel their suspicions quickly and with minimal intrusion upon Dickerson.  Thus, the request by the officers for Dickerson to take them to the apartment less than one-eighth of a mile away was "neither unreasonable nor conducted under circumstances that constituted the functional equivalent of an arrest."  Thomas v. Commonwealth, 16 Va. App. 851, 858, 434 S.E.2d 319, 323 (1993), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).

Furthermore, Dickerson's conduct of becoming visibly nervous as he was about to enter the police car, attempting to run from the officers instead of entering the police car and violently struggling with them, coupled with the fact that he had already been unable to specifically identify the person he was allegedly visiting, provided the officers with probable cause to seize and arrest him for trespassing.  See James v. Commonwealth, 8 Va. App. 98, 101-02, 379 S.E.2d 378, 380 (1989) (probable cause for arrest shown when apartment complex posted with "No Trespassing" signs, defendant was acting in suspicious manner, and when officer approached to inquire further, he fled).

"An arresting officer may, without a warrant, search a person validly arrested."  Michigan v. DeFillippo, 443 U.S. 31,

-

35 (1979).  The officers discovered the challenged evidence during the search of appellant's person incident to arrest. Therefore, we find that the search of appellant and the seizure of appellant's contraband were reasonable under the meaning of the Fourth Amendment.  See Jordan v. Commonwealth, 207 Va. 591, 596-97, 151 S.E.2d 390, 394-95 (1966) (holding that a search incident to an arrest for trespassing was constitutional).

Accordingly, we agree with the trial court that the officers acted reasonably under the totality of the circumstances, and we find no error in the denial of the motion to suppress the evidence.

Affirmed.

-