COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Willis and Clements
Argued at Salem, Virginia


JERRI LYNN SCEARCE
                                                OPINION BY
v.    Record No. 0638-01-3          JUDGE JAMES W. BENTON, JR.
                                              APRIL 9, 2002
COMMONWEALTH OF VIRGINIA

        FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                    James F. Ingram, Judge

        Jon Ian Davey for appellant.

        John H. McLees, Jr., Senior Assistant
        Attorney General (Randolph A. Beales,
        Attorney General, on brief), for appellee.


        The trial judge convicted Jerri Lynn Scearce of attempting

to procure a witness to commit perjury.  On appeal, Scearce

contends the trial judge erred in ruling that the prosecutor

laid a proper foundation to admit into evidence a statement

under the past recollection recorded exception to the hearsay

rule.  For the reasons that follow, we reverse the conviction

and remand the case for a new trial.

                              I.

        The evidence proved that a police officer arrested

Scearce's fiancé, Henry Tickle, for driving on September 30,

2000 between 4:00 a.m. and 4:30 a.m., which was outside the

restricted hours of Tickle's driving permit.  A grand jury later

indicted Scearce for attempting to induce or procure William

Wesley Hyler to commit perjury, in violation of Code §§ 18.2-26 and 18.2-436.

At Scearce's trial, which occurred February 2, 2001, Hyler testified that Scearce asked him to testify in court that Tickle had been asleep on Hyler's sofa at 4:00 a.m. Hyler testified that he "can't remember the exact date or month" he talked to Scearce and that he "believe[d] it was a Saturday or something like that," but "ain't sure." Although Hyler testified that he later told a police officer about Scearce's request, Hyler could not recall, in relation to his conversation with the officer, when he had spoken with Scearce.

The prosecutor informed the trial judge that immediately prior to trial the police officer read to Hyler, who cannot read, the statement the officer had transcribed on October 9, 2000, when Hyler spoke to the officer. Upon the prosecutor's motion, the trial judge permitted the bailiff to leave the courtroom with Hyler and refresh Hyler's memory again by reading to Hyler the statement the police officer had written. When questioned by the prosecutor after this attempt to refresh his memory, Hyler testified that Scearce had come to his home "that Saturday before last, on October the 9th." The prosecutor then asked, "[t]he Saturday . . . before last, when you talked to the police on October the 9th?" After Hyler responded, "yes sir," the prosecutor asked the judge to take "judicial notice of the

calendar . . . that would have been Saturday before last, from October the 9th, would have been September the 30th."

In response to further questions by the prosecutor, Hyler testified twice that Scearce "didn't say what date" she wanted him to say Tickle was asleep on his sofa. The prosecutor requested leave to prove, as a past recollection recorded, the statement Hyler gave to the officer and then asked Hyler the following questions:

> Q. [T]his is a statement that you gave to Officer Pace on October the 9th? Is that correct?
>
> A. Yes sir.
>
> Q. [W]as your memory better then or is it better now?
>
> A. My memory has never been real good.
>
> Q. It's never been real good?
>
> A. Yes sir. I'll be honest with you?
>
> Q. Well, would you say it was better on October the 9th, than it was today, about what happened on September 30th?
>
> A. No . . . I couldn't say.
>
> Q. You couldn't say?
>
>    \*    \*    \*    \*    \*    \*    \*
>
> A. . . . like if somethin[g] happened today . . . say somethin[g] happened on Monday . . . if I had to go the next day and do somethin[g], then I mean I can remember it.
>
> Q. Well, but do you remember what [Scearce] told you that day she came to your house?

A.  Yeah, she said she wanted me to go . . . go to Court and tell that [Tickle] was sleep on my couch.

Q.  Okay.  Do you remember what time she said Henry would have been asleep on your couch?

     *    *    *    *    *    *    *

A.  4:00 A.M.

Q.  4:00 A.M.  All right, but you don't remember what date she said that?

A.  No sir.

Q.  But you told the police all of this on October the 9th, is that correct?

A.  Yes sir.

Q.  And Officer Pace reduced your statement to writing?

A.  Yes sir.

Q.  And he read it back to you?  Is that correct?

A.  Yes sir.

Q.  Well, was it correct at that time?

A.  Yes sir.

On cross-examination, Hyler admitted that his memory was such that he might not remember on Wednesday something that happened on Monday.  Scearce's counsel asked, "so if somebody came to you and told you something, or suggested something, on one day, then certainly nine days later, you may not remember accurately, would you?"  Hyler testified that he would "mostly not" remember.

The prosecutor then recalled as a witness the officer who transcribed Hyler's statement.  The officer testified that he

spoke to Hyler on October 9, that Hyler was "clear" in relaying information on that day, that he wrote what Hyler told him, that he read his writing to Hyler, and that Hyler signed it. The officer was then permitted, over the hearsay objection of Scearce's counsel, to read the statement into evidence. In pertinent part, the statement was as follows:

> "I give the following statement . . . on 10/9/2000 at 11:30 A.M., about a conversation between myself and Jerri Scearce. The Saturday before last, around 6:00 o'clock, to 6:30 P.M., Jerri Scearce, and . . . . I went into my kitchen, where Jerri asked me to go to Court with her, to tell that Henry Tickle was asleep on my couch, at around 4:00 o'clock A.M. that morning. I told Jerri that I could not do that. I won't lie for my own brother. I ain't going to lie for anyone. I know that's perjury, and that's wrong." Signed by William Wesley Hyler . . . .

Scearce presented testimony by an agent of a bonding service that she went to the magistrate's office prior to 5:00 p.m. on September 30 and remained there until after 7:00 p.m. Tickle also testified that he left the jail with Scearce after 7:00 p.m. and remained with her until 8:00 p.m. Scearce testified that she did not see Hyler on September 30 and that she was at the magistrate's office between 5:00 p.m. and 7:00 p.m. She also testified that she never asked Hyler to

testify about Tickle and would not have done so because Tickle and Hyler were antagonistic to each other.

The trial judge convicted Scearce of attempted subordination of perjury.  This appeal followed.

## II.

"The general rule of past recollection recorded allows, over a hearsay objection, a witness with no independent recollection of an incident to testify directly from notes or reports if certain requirements are met."  James v. Commonwealth, 8 Va. App. 98, 102, 379 S.E.2d 378, 380 (1989).  We have held that the memorandum of past recollection recorded need not be made by the witness whose memory is at issue.

> "[T]he general rule [among courts nationwide] is that it is not essential that the record of past recollection shall have been made by the witness, if he knows that it is true as written.  It is sufficient if the memorandum was made by someone else but has been examined by the witness and is known by him to be correct."

Bailey v. Commonwealth, 20 Va. App. 236, 241, 456 S.E.2d 144, 146 (1995) (citation omitted).

Under the past recollection recorded exception, the proponent of the statement also must establish each of the following circumstances:

> "(1) [T]he witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of [the event], (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum."

<u>Scott v. Greater Richmond Transit Co.</u>, 241 Va. 300, 304, 402 S.E.2d 214, 217 (1991) (emphasis added and citation omitted). Scearce challenged at trial and now on appeal whether on October 9 Hyler had a clear and accurate memory of the events contained in the officer's memorandum and whether Hyler was able to vouch for the accuracy of the memorandum. We address Scearce's first contention that the evidence failed to prove Hyler's memory was clear and accurate on October 9.

When accepting testimony under the past recollection exception, the trial judge relies heavily on the witness' pledge that the witness' memory was accurate at the time the memorandum was written. The record clearly proves, however, that the prosecutor was unable to establish that Hyler's memory was clear and accurate on October 9, when the officer's memorandum indicated that Hyler's statement was made. Hyler's own testimony was that he could not say that his memory was accurate on that date. Indeed, Hyler testified that his memory is not good more than one or two days past the happening of an event. Based on Hyler's own testimony, had Scearce approached him on September 30, he would "mostly not" remember the event on October 9 in order to relay it accurately to the officers. Indeed, Hyler specifically testified that he could not say his memory about the events at issue was better on October 9 than it was at trial. The officer's testimony that Hyler was "clear" in his statement cannot supplant Hyler's own testimony about his deficient memory. Thus, we hold that, although Hyler testified that the officer wrote his statement, the evidence fails to establish that Hyler's memory of his conversation with Scearce was clear and accurate

when he spoke to the officer.

Furthermore, the trial judge's error in permitting the officer to read the statement into evidence was not harmless. The defense presented evidence that Hyler had a motive to fabricate his testimony that Scearce wanted him to perjure himself. Scearce presented evidence that Hyler, whom she had dated twenty years ago, disliked Tickle, her fiancé. Scearce also attempted to discredit Hyler with his admission that he sometimes drank heavily and that he had drunk beer on both September 30 and October 9. Critically, Hyler was not able to testify without some aid as to the date of his conversation with Scearce. In addition, Hyler testified twice that Scearce did not say what day she wanted him to say Tickle was asleep on the sofa, and Hyler did not testify that Tickle had never slept on his sofa. Hyler's credibility was at issue.

The officer who transcribed Hyler's statement also testified that after he asked Hyler "a few questions . . . as to the date and time [the conversation] had happened, . . . [he] checked [his] notes to make sure that that was the same date that [he] had seen Mr. Tickle driving. Then . . . [he] wrote the statement." In assessing whether Hyler fabricated the story, the trier of fact clearly could have substantially relied upon the officer's memorandum of Hyler's statement to determine that Hyler knew the details of the event. Thus, we cannot say that the conviction was not substantially affected by the admission of the statement. Clay v. Commonwealth, 262 Va. 253, 261, 546 S.E.2d 728, 732 (2001).

III.

Scearce also challenges whether the evidence was sufficient to support the conviction.  "When an appellant challenges the sufficiency of the evidence to sustain his conviction, we review the evidence in the light most favorable to the Commonwealth and grant to it 'all reasonable inferences fairly deducible therefrom.'"  Kelley v. Commonwealth, 17 Va. App. 540, 548, 439 S.E.2d 616, 621 (1994) (citation omitted).  So viewed, Hyler provided testimony from which a trier of fact could find that Scearce had sought to have him give testimony in court on Tickle's behalf.  Scearce's "argument is based entirely on the issue of witness credibility."  Walker v. Commonwealth, 258 Va. 54, 70, 515 S.E.2d 565, 575 (1999).  The critical issue was whether the finder of fact could be persuaded that Hyler was truthful and could accurately recall the events.  That is a matter for the finder of fact to consider upon properly admitted

evidence.  Accordingly, we cannot say the evidence was insufficient.[1]

For these reasons, we reverse the conviction and remand the case for a new trial.

<u>Reversed and remanded</u>.

---

[1] We do not address Scearce's argument that she was improperly convicted of an attempted inchoate crime.  She failed to properly preserve this issue for review.