COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Bumgardner and Frank
Argued at Richmond, Virginia


SHAMONE LAMONT PARHAM

MEMORANDUM OPINION* BY

v.      Record No. 1544-04-2      JUDGE ROBERT P. FRANK
OCTOBER 4, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Oliver A. Pollard, Jr., Judge

Daniel W. Hall, Senior Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Kathleen B. Martin, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


Shamone Lamont Parham, appellant, was convicted, in a bench trial, of possession of

cocaine, in violation of Code § 18.2-250. On appeal, he contends the trial court erred in not

granting his motion to suppress the cocaine since the police had no probable cause to arrest him

for trespassing. We agree with appellant and reverse the conviction.

BACKGROUND

On November 13, 2003, at approximately 6:30 p.m., Virginia State Police Trooper J.

Worley, Jr., was assisting Sergeant E. Jones of the Petersburg Police Department in patrolling the

Pin Oaks housing project, a posted no trespassing property, in unmarked vehicles. Nothing in

the record suggests appellant knew the unmarked police car was a police vehicle.[1] Trooper

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Sergeant Jones testified at trial that the unmarked vehicle was known by "citizens on the
street" as a police vehicle. However, the defense objected to this testimony and the trial court
sustained the objection.

Worley observed a man, standing alone, wearing a black knit cap, black pants, and a black and gray jacket standing approximately 5 to 6 feet in front of an apartment door. Appellant looked toward Sgt. Jones's vehicle and then began walking alongside the wall of the apartment toward the rear of the building. Trooper Worley then exited his vehicle to follow appellant. As Trooper Worley turned the corner of the building, he observed appellant enter the rear door of the same apartment appellant was standing in front of earlier. Trooper Worley then advised Sgt. Jones of his observations.[2]

Sgt. Jones proceeded to knock on the front door of the same apartment Trooper Worley observed appellant enter from the rear. The tenant, Murphy, answered the door and let the officers inside. Murphy said appellant, whom she knew by the nickname "Monkey," did not live in the Pin Oaks complex. Murphy, however, let appellant in to use the telephone when he knocked at her rear door. She testified that appellant had not been visiting her prior to using the telephone, yet she told the police appellant frequently came to her apartment to use her phone.

Appellant was using the telephone in the living room when the officers entered. Appellant agreed to speak with Sgt. Jones. At least one officer blocked the entrance to the small apartment while appellant was questioned. Sgt. Jones asked appellant for identification and questioned him about his being outside the apartment. Appellant said he was from Richmond and had no identification. He was at Pin Oaks to see "someone." Appellant claimed someone had used his social security number and driver's license and that the DMV was to have corrected the matter. Sgt. Jones informed appellant that he thought he saw appellant in court two days before and that he had been barred from Pin Oaks. Appellant responded that he was not that individual. Sgt. Jones responded "okay" and did not pursue the issue further. When asked for

---

[2] The record does not disclose what Worley told Jones.

his name, appellant responded "Jamone Parham." He furnished different ages and birth dates, and birth dates that did not correspond with his age. He did not know his social security number.

Sgt. Jones told appellant that he thought appellant was being untruthful and that he believed appellant was wanted by the police. Sgt. Jones arrested appellant for trespassing on the posted Pin Oaks premises based on appellant's behavior outside of the apartment, testifying, "I arrested him for – our initial contact was standing between the buildings where he saw us, and then as soon as my police car came into view, he darted from the nearest door to the rear door." Sgt. Jones then recovered appellant's identification and determined he was wanted by the Petersburg Police Department.

Sgt. Jones asked appellant if he wanted his cap, which was lying beside a chair where appellant was sitting. Appellant did not answer. Appellant was wearing the cap when he entered the apartment and removed it while the police were there. Sgt. Jones picked up the cap to put it on appellant's head and discovered it contained five ziplock bags of crack cocaine, totaling .450 gram.

Appellant moved to suppress the cocaine found in his cap because the police lacked probable cause to arrest him for trespassing. Appellant renewed his motion at trial. The trial court found that the police had probable cause to believe appellant was trespassing and denied the motion to suppress. In a bench trial, the appellant was convicted of possession of cocaine.

This appeal follows.

## ANALYSIS

"On appeal from a denial of a suppression motion, we examine the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Barkley v. Commonwealth, 39 Va. App. 682, 687, 576 S.E.2d 234, 236 (2003).

> An appellant's claim that evidence was seized in violation of the
> Fourth Amendment "presents a mixed question of law and fact that

we review *de novo* on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment."

Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)). On appeal, "we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Barkley v. Commonwealth, 39 Va. App. 682, 690, 576 S.E.2d 234, 238 (2003) (quoting Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002)).

"[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981). See also United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983). The validity of an arrest depends on whether the officer had probable cause to believe that a crime had been committed. DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987). See also Code § 19.2-81.

Probable cause is a "flexible, common-sense" standard that does not "demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983). Probable cause deals with probabilities that are not "technical" but are "the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act." Garza v. Commonwealth, 228 Va. 559, 564, 323 S.E.2d 127, 129 (1984).

"'In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of

crime control.'" Ross v. Commonwealth, 35 Va. App. 103, 106, 542 S.E.2d 819, 820-21 (2001) (quoting Washington v. Commonwealth, 219 Va. 857, 862, 252 S.E.2d 326, 329 (1979)).

A search made incident to an arrest is not valid if the arrest is not valid. See Jones v. Commonwealth, 18 Va. App. 229, 234, 443 S.E.2d 189, 192 (1994). Evidence obtained as a result of a search incident to an invalid arrest, one without probable cause, should be suppressed. Id.

"'Criminal intent is an essential element of the statutory offense of trespass, even though the statute is silent as to intent . . . .'" Reed v. Commonwealth, 6 Va. App. 65, 71, 366 S.E.2d 274, 278 (1988) (quoting 75 Am. Jur. 2d Trespass § 87 (1974)). Code § 18.2-119 in relevant part reads, "[i]f any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof . . . after having been forbidden to do so by a sign or signs posted . . . [he] shall be guilty of a Class 1 misdemeanor."

Under this standard, with the evidence viewed in the light most favorable to the Commonwealth, Sgt. Jones did not have probable cause to believe appellant was trespassing on the Pin Oaks housing complex. Appellant's motion to suppress the cocaine discovered in his cap during the search incident to arrest should have been granted.

Appellant's merely walking around a posted building toward the rear to knock on the back door of an apartment, while looking toward an unidentified vehicle, does not rise to the level of probable cause for trespassing. Appellant's actions fall far short of flight and are not distinguishable from the lawful actions of Pin Oaks residents or guests in the same situation. Trooper Worley's conclusion that appellant was trespassing based on these actions is unreasonable in the totality of the circumstances.

In Jones, the police lacked probable cause to arrest Jones for trespassing on posted property merely because he was standing on the premises with another man at 4:30 p.m. Jones,

18 Va. App. at 233, 443 S.E.2d at 191. Moreover, the police were in plain clothes, and Jones testified that he ran because he did not recognize the men running toward him. He further testified that he was visiting his sister and niece, both of whom lived at the apartment complex. Id. at 231, 443 S.E.2d at 190. The court reasoned that, at most, this activity permitted only a "bare suspicion" of criminal activity and found that the officer had no reason to believe Jones had been forbidden to be on the apartment premises. Id. at 232, 443 S.E.2d at 191. Similar to the present case, the time of day does not make appellant's presence at the apartment complex suspicious. Appellant here merely walked around the building when he saw an unidentified vehicle. Like Jones, who was visiting his sister and niece, appellant was at the complex to use a friend's telephone.

In Jordan v. Commonwealth, 207 Va. 591, 151 S.E.2d 390 (1966), the police had probable cause to make an arrest for trespassing. The police were conducting a routine check of an abandoned bowling alley early in the morning that was posted "no trespassing Government Property." As the police approached the building, they spotted the appellant running across the property. Id. at 593, 151 S.E.2d at 392. The officer chased appellant, calling for him to halt then firing a warning shot into the air. Jordan ultimately surrendered to the police. Id. On these facts, the Supreme Court of Virginia found the officers had probable cause to arrest Jordan for trespassing. This is distinguished from the present case because appellant, unlike Jordan, did not run as soon as he saw the police. Appellant simply looked toward an unidentified vehicle and proceeded to walk around a building. Furthermore, the time of day in Jordan – early morning – and the location of the trespass – an abandoned building – is not comparable to appellant's presence in a residential apartment complex in the afternoon.

The case at bar is readily distinguished from James v. Commonwealth, 8 Va. App. 98, 379 S.E.2d 378 (1989), in which the police had probable cause to arrest the appellant for

- 6 -

trespassing. James, like appellant, was observed on a posted "no trespassing" property. The police in James observed appellant at 11:00 at night walking in the same direction as a woman who had just exited her vehicle. The premises in James had frequent occurrences of trespassing, rapes, and "peeping tom" incidents. Id. at 100-01, 379 S.E.2d at 379. James then fled when police tried to question him. Id.

Appellant's actions are distinguishable from James. Officers saw James at 11:00 p.m. following a woman from her car in an area where there were frequent occurrences of rapes and "peeping tom" incidents. Aside from standing outside an apartment complex at 6:30 p.m., Trooper Worley never alleged that appellant was engaged in other activity that drew his attention to appellant. While James "fled" when he was approached by a uniformed officer, Trooper Worley, who was dressed in plain clothes and rode in an unmarked police vehicle, testified that he saw appellant "walk" around the apartment building to Murphy's apartment. There is no evidence to suggest that this movement was prompted by the presence of Sgt. Jones and Trooper Worley, or that this was inconsistent with his purpose on the property, i.e., to visit Murphy's apartment and use her phone.

In Langston v. Commonwealth, 28 Va. App. 276, 504 S.E.2d 380 (1998), the appellant was standing with a group of men in the yard of an abandoned house that was posted "no trespassing." The house was located in an area police knew to be a drug "hot spot." Id. at 280, 504 S.E.2d at 382. The officers knew that the property was abandoned, and the court held that these circumstances gave police probable cause to arrest the appellant for trespassing. Id. at 283-84, 504 S.E.2d at 383. The abandoned property in Langston indicated that no one should be on the property. In contrast, appellant here was in a residential apartment complex where people are regularly seen.

The Commonwealth relies on appellant's actions and evasive answers to Sgt. Jones's questions inside Murphy's apartment as providing probable cause. However, before questioning appellant, Sgt. Jones had resolved any doubt as to appellant's status as a trespasser. Murphy had already related that she knew appellant, had allowed appellant into her apartment on this occasion, and had previously let appellant into her apartment to use her telephone. Therefore, appellant was no longer a suspected trespasser because he had permission to be on the premises. At this point, the inquiry should have ended. Nevertheless, when the questioning of appellant continued, appellant gave answers, although evasive, consistent with what Sgt. Jones already knew. Appellant indicated he was from Richmond, which is in accord with him not being a resident of Pin Oaks. Sgt. Jones already knew this because Murphy had told him so. Appellant further said he was in Pin Oaks to "see someone." Again, this response was consistent with what Sgt. Jones already knew, i.e., that appellant did not reside at Pin Oaks. Moreover, Sgt. Jones admitted at trial that he arrested appellant based on Trooper Worley's observations outside of the apartment, which fall short of probable cause. Thus, appellant's evasive answers are legally irrelevant in determining whether Sgt. Jones had probable cause to arrest appellant for trespassing outside of Murphy's apartment.

The probable cause, as articulated by Sgt. Jones, was primarily based on appellant's flight. Although Sgt. Jones testified that after appellant saw the unmarked police vehicle, he "darted" to the rear of the building, there is no evidence of flight or "darting" in the record. Sgt. Jones did not see appellant outside the apartment. His knowledge is limited to what Trooper Worley told him. Trooper Worley never indicated appellant "darted." Trooper Worley's testimony was "the subject then at that time began to walk alongside the wall of the apartment, heading towards the rear of the buildings." Thus, there is no evidence of evasive activity. Also,

as noted above, there is no evidence that appellant recognized the unmarked police vehicle as a police vehicle.

At most, appellant's behavior outside the apartment complex may have provided officers with a reasonable suspicion that he was trespassing on the Pin Oaks property. However, that reasonable suspicion, along with any authority the officers may have had to detain appellant, dissipated as soon as Murphy informed the officers that appellant was in her apartment and on the property with her permission. See Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001) (holding that an investigative detention arising from an officer's reasonable suspicion of criminal activity can last no longer than is necessary "to quickly confirm or dispel that suspicion"). Here, the officers' further investigation did not lead to "facts rising to the level of probable cause" that would justify the arrest of appellant for trespassing. Illinois v. Wardlow, 528 U.S. 119, 126 (2000). Thus, we reverse appellant's conviction and dismiss the indictment.

CONCLUSION

For the forgoing reasons, the judgment of the trial court is reversed and the indictment is dismissed.

Reversed and<br>dismissed.